Edward Thompson, J.
The defendant moves in coram nobis for a new trial. He contends that the recent decision in Bruton v. United States (391 U. S. 123 [May, 1968]) overruling Delli Paoli v. United States (352 U. S. 232 [1957]) requires such reversal, this for deprivation of the right of confrontation, since his codefendant’s confession inculpated the movant at a joint trial. Roberts v. Russell (392 U. S. 293 [June, 1968]) is relied upon to afford retroactivity to the Bruton holding (supra) this undergirded by Pointer v. Texas (380 U. S. 400 [1965]) which *863 held that the Fourteenth Amendment (due process clause) guarantees full Sixth Amendment protection in State prosecutions.
The facts are as follows:
In 1959, by jury trial, the defendant was convicted of burglary second degree, robbery first degree, rape first degree and assault second degree to commit rape. Theretofore in 1950 he had been convicted (upon his own confession and a plea of guilty) of the crime of robbery, second degree.
Upon arraignment on a prior offense information, the defendant stood mute. A trial was had upon such information and the jury by special verdict found him to be a prior felony offender and after such verdict the defendant was duly sentenced.
The judgment of conviction was unanimously affirmed by the Appellate Division in June, 1961. In October, 1961, Judge Stanley H. Ftjld denied leave to appeal to the Court of Appeals. Certiorari to the United States Supreme Court was denied (370 U. S. 952).
Prior to Bruton (supra) it was the law of this State and of this Nation, as propounded in Belli Paoli (supra) that the basic premise of the jury system is that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. More specifically, at a joint trial where the confession of one defendant is admitted into evidence and said defendant does not testify, a nonconfessing defendant is not deprived of the right of confrontation other than as harmless error where the court properly instructs the jury that the confession could only be considered by them as evidence against the declarant or maker thereof and that no inference of guilt therefrom may spill over into any nonconfessing defendant. This rule, though long established, was specifically overruled in Bruton (supra) the court holding that an encroachment on the right to confrontation cannot be avoided by instruction to the jury to disregard inadmissible hearsay evidence. In such a case it is apparent that severance must obtain retroactively. (Roberts, supra.)
However, the facts in this movant’s case fall far short of compliance with the principles laid down in Bruton, Roberts and Pointer (supra). The defendant’s further reliance upon People v. Bastone (30 AD 2d 828) and People v. Cassidy (30 AD 2d 795) is similarly misplaced. Though this defendant was jointly tried with the codefendant, Jones, it must here be significantly noted that in all respects the confessions of both defendants are one and the same, each admitting full complicity in every respect.
I am not unmindful of the recent holding of the Third Circuit Court of Appeals in United States ex rel. Johnson v. Yeager *864 (399 F. 2d 508) decided August 23, 1968 where it was held that the harmless error doctrine (Chapman v. California, 386 U. S. 18) does not save convictions based upon cross-implicating confessions. In Johnson (supra) both defendants made such cross-implicating confessions which were duly admitted against them under the “ due process ” available to them at the time of the trial (pre-Miranda). However, the compelling feature which caused the reversal was the blatant fact that the confessions varied materially on the extent of the participation of the codefendants in the plan and execution of the crime. More particularly, one defendant slew the victim independently of any struggle, separate and apart from the plan to rob. Of course, this presented, in the words of the court, ‘1 a serious risk that the issue of guilt or innocence may not have been reliably determined.” In addition thereto, certain hearsay statements bearing on the degree of guilt were plainly contained in said confession. Under these circumstances, the court held that “ these confessions added substantial, perhaps even critical, weight to the government’s case in a form not subject to cross examination, since (the defendants) did not take the stand.”
It is apparent from the foregoing that the above-described differences in the confessions were very material to the jury’s decision. But the instant case portrays a particularly different picture. The confessions of both Jones and DeVine are inherently alike in each respect- regarding every element of the crimes charged in the indictment. In truth and in fact, DeVine’s confession fully reveals in his questions and answers to the investigating District Attorney that after he and Jones gained entrance to the victim’s apartment he said “ we tied her up. I asked her if she had any money. She said it was in the kitchen.” Further, in said confession when asked how she was tied up, DeVine said ‘ ‘ I told him to put something in her mouth. He got a tie off the table. I told him to find something to tie her hands behind her back with.” Too, in said confession, when asked what happened when he had relations with the victim, DeVine replied “ she started groaning, making noises and he (sic) I hit her.” When asked whether he had any weapon with him, DeVine answered ‘£ yes sir * * * a beat up old knife.” When asked whether he used the weapon at any time in the victim’s apartment, DeVine answered “ I used it to scare her with”, continuing “it was open.” When asked whether he said anything to the victim at the time, he answered that he told her “ just to keep quiet and she wouldn’t get hurt * * * she screamed and I told her not to scream and she wouldn’t get hurt.’ ’ In addition to the foregoing, DeVine admit *865 ted in his confession that the knife exhibited to him by the Assistant District Attorney was the knife that he used upon the victim and, in fact, DeVine scratched his own initials “ T.D.” on said knife at that time.
It is patently apparent from the foregoing that the participation of DeVine in all of the criminal acts was fully admitted by him in each and every regard, this even tb a greater incriminating extent than that made by his codefendant Jones. On many occasions the jury was instructed by the court during the trial and later in its charge to the jury that the confession of any defendant could be used only against the confessor. Additionally, the jury was thoroughly instructed in the then existing law of “ due process ” regarding the voluntariness of confession and inculpatory statements. It is further true that all and related questions of legal sufficiency were considered throughout the appellate process and in post-conviction proceedings by way of writ of error coram nobis. Many and sundry other post-conviction remedies were similarly brought and tested and, at this juncture, all findings have been rendered against the defendant.
The trial record is replete with fulsome and copious details of each and every element of all of the crimes of which the defendant has been found guilty, these wholly corroborated by a substantial number of witnesses who testified to circumstances immediately after the crime, all of which are too numerous to set forth herein.
In sum, the proof against DeVine, separate and apart from his confession, and the confession of his codefendant Jones, was overwhelming, and I rule that the harmless error doctrine is applicable under the facts and circumstances of this case (Chapman v. California, supra) and an automatic reversal of the conviction is not required. Had the defendant DeVine not inculpated himself so extensively by his own confession, the situation would be entirely different. Motion denied in all respects.