Randolph DORSEY,
Petitioner-Appellant,

v.

WARDEN, SOUTHERN MICHIGAN
STATE PRISON,
Respondent-Appellee.

No. 75–1142.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1975.

Decided Oct. 17, 1975.

Randolph Dorsey, State Appellate Defender, Francis L. Zebot, Asst. State Appellate Defender, Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Lansing, Mich., Robert A. Derengoski, Sol. Gen., Keith D. Roberts, Asst. Atty. Gen., Lansing, Mich., for respondent-appellee.

Before EDWARDS, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an appeal from the district court dismissal of petitioner Randolph Dorsey's application for writ of habeas corpus, 28 U.S.C. § 2254.

Dorsey was convicted of the crime of extortion, M.C.L.A. 750.213; M.S.A. 28.-410, in a bench trial before the Circuit Court for the County of Genesee, Michigan. His conviction was affirmed on direct appeal by the Michigan Court of Appeals in *People v. Dorsey,* 45 Mich. App. 230, 206 N.W.2d 459 (1973), and leave to appeal to the Michigan Supreme Court was thereafter denied.

The charges against Dorsey arose out of the claim that one Juanita Watson had been coerced by Dorsey into soliciting for the purposes of prostitution to raise money for Dorsey. Dorsey's case was set down for trial in the circuit court on September 30, 1971. On the morning of that date, Dorsey appeared with counsel and waived trial by jury. The trial was then adjourned until 2:00 p. m. that afternoon for the convenience of defendant's counsel.

The prosecution's main witness, the complainant Juanita Watson, was subpoenaed to appear for Dorsey's trial on September 30. Although she had appeared in court on the morning of the 30th, she failed to appear that afternoon. The circuit judge accordingly adjourned Dorsey's case and at the same time issued a bench warrant for Watson's arrest and apprehension. On October 5, Ms. Watson, having learned in the meantime that she was being sought, voluntarily surrendered to police. She was brought before the same circuit judge who was later to preside over Dorsey's case. Also present was the same assistant prosecutor who was later to try Dorsey's case. The record does not reflect that either Dorsey or his counsel was present at the proceedings.

The circuit judge explained to Ms. Watson that she was before him for the purpose of determining whether she should be held guilty of contempt and be placed in jail until such time as Dorsey's case was to be brought on for trial. The judge questioned Ms. Watson in detail concerning the reasons for her failure to return to the courtroom and testify on the date Dorsey's trial was first scheduled. As far as we can ascertain from the record, Watson did not testify under oath, but told the judge that she had been reluctant to testify and had conveyed this reluctance to one Eddie Hilton that morning. Thereafter, according to Watson, she and Hilton went across the street to a bar and later to Hilton's apartment, where she became intoxicated. The judge questioned Watson closely concerning whether any threats were made against her and she denied the existence of any such threats. She brought out her understanding that Hilton and Dorsey were friends, but again denied she received any threats directly or indirectly from Dorsey.

Watson again repeated to the trial judge that she did not want to take the stand. When the judge suggested to her that she might like to be kept in custody while the case was pending so that no one could threaten her, she replied that she preferred not to be so held, but would like to go to the hospital where she was in need of some minor surgery. The judge said he would allow her to seek hospitalization for the surgery and that thereafter she would be returned to the county jail. The court then, finding Watson in contempt for non-appearance, sentenced her to thirty days confinement.

Dorsey's case came on for trial on October 27 and 28. Watson was called on behalf of the prosecution. Dorsey, in addition to testifying on his own behalf and making a general denial of the charges, also called as a defense witness the same Eddie Hilton who Watson said had plied her with drinks on September 30. No mention was made of the colloquy between Watson and the trial judge on October 5, nor was Hilton questioned at all concerning any part he may have had in the incident.

Dorsey filed his petition for habeas corpus on December 11, 1973 in the United States District Court for the Eastern District of Michigan. Dorsey raised four issues in his petition in the district court. After hearing oral argument on the respondent's motion to dismiss, the district

judge granted the motion on November 14, 1974.

On this appeal, Dorsey raises issues dealing both with a claimed violation of his right to due process under the Fourteenth Amendment and a violation of his right to confront the witnesses against him guaranteed by the Sixth and Fourteenth Amendments. Both claims arise out of the fact that Watson testified at her contempt hearing, out of the presence of either Dorsey or his attorney, and before the same judge and assistant prosecutor who were later to try Dorsey's case.

We do not consider this case to be one involving denial of Dorsey's Sixth Amendment right to confront the witnesses against him. The Sixth Amendment guarantee that "[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." has been held applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). As noted by the Supreme Court in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the core of this guarantee is the right to confront witnesses at the time of trial:

> "Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:" 399 U.S. at 157, 90 S.Ct. at 1934.

■■ Here Dorsey was able to cross-examine Ms. Watson at his trial. We recognize that this fact does not automatically insure that he was not denied his constitutional right of confrontation. Cf. *United States v. Clark,* 475 F.2d 240, 247 (2nd Cir. 1973). However, in this case the only testimony given by Watson which Dorsey did not have an opportunity to cross-examine her upon was given at a contempt hearing wholly collateral to Dorsey's trial. Additionally, as noted by the district judge, her testimony at the contempt hearing did not deal with the substantive charges against Dorsey, but, at worst, reflected on the credibility of his witness, Eddie Hilton. Under these circumstances, we find no violation of Dorsey's constitutional right of confrontation.

Dorsey's claim that the incident in question constituted a deprivation of his right to due process of law under the Fourteenth Amendment has two aspects. First, Dorsey claims that under the Due Process Clause, he has a constitutional right to have an impartial decision maker determine his guilt or innocence. He claims that because the state trial judge who rendered the decision in his case also conducted Ms. Watson's contempt hearing, he could not be impartial. Second, Dorsey claims that the failure of the judge or prosecutor to disclose to him the fact of the contempt hearing, at which testimony material to the credibility of his character witness was heard, also constituted a suppression of evidence in violation of the Due Process Clause. Because we feel that on the record before us we cannot adequately evaluate the merits of these claims, we reverse the judgment of the district court and remand the case for an evidentiary hearing on these issues.

With regard to Dorsey's claim that he was denied his constitutional right to due process because the trial judge presiding over his case was not impartial, our examination of the record does not reveal that this particular issue was raised by Dorsey in the state courts. The statement of issues presented contained in the Michigan Court of Appeals opinion in *People v. Dorsey, supra,* does not indicate that this precise issue was presented to that court. The record we have does not indicate whether Dorsey sought to raise this issue by means of post-trial motion in the state trial court or when he sought leave to appeal to the Michigan Supreme Court.

■ Since we are unclear whether Dorsey has exhausted his state remedies on this issue as required by 28 U.S.C. § 2254, we decline to pass upon it. On remand, the district judge should deter-

mine whether the issue of the impartiality of the state trial judge was exhausted in the state court system. Cf. *Fann v. Havener*, 516 F.2d 887 (6th Cir. 1975). Should he find that such issue is not exhausted, then petitioner is free to pursue whatever state remedy he has on this issue. If, on the other hand, an examination of the record leads the district judge to conclude that this issue has been exhausted, he may then hold such other proceedings as may be necessary to determine whether the petitioner was denied his right to a fair trial before an impartial judge. In this regard, we do not mean to imply, in remanding, that it was a per se violation of petitioner's constitutional right to due process for the state trial judge to have conducted a contempt proceeding of a witness out of the presence of petitioner or his counsel. We recognize that this is but one of a myriad of administrative hearings at which a trial judge may become exposed to facts and circumstances of an alleged crime of which a defendant is accused. At the same time we also recognize that the totality of circumstances can in a given case combine to deprive a defendant of those fundamental concepts of justice which lie at the base of our civil and political institutions, *Hebert v. Louisiana*, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270 (1926), and which are in the final analysis the very heart of due process.

Dorsey's other claim is that he was denied due process of law when both the prosecutor and trial judge failed to reveal to him evidence material to the credibility of his character witness, Eddie Hilton, obtained at the October 5, 1971 contempt hearing, at which Ms. Watson made certain remarks about Hilton, the only witness besides Dorsey to testify for the defense. This claim was clearly exhausted in the state court system.

The district judge, in dismissing Dorsey's petition, noted that:

" . . . the prosecution has a duty to disclose to the defense evidence which may materially affect the deter-

mination of guilt and the punishment to be imposed. *Giles v. Maryland*, 386 U.S. 66 [87 S.Ct. 793, 17 L.Ed.2d 737] (1967); *Napue v. Illinois*, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959)."

Further, the district court noted that suppression of material evidence will require a new trial, irrespective of the prosecutor's good faith, even as to evidence affecting only credibility when the reliability of a given witness may well be determinative of guilt or innocence. Nevertheless, the district court found:

"[T]he testimony presented at the contempt hearing was not favorable to the accused and, even if disclosed, would not have helped the Petitioner in the preparation of his case. If a new trial were ordered, the same evidence would be produced on both sides and the outcome would probably be the same."

The district judge found that Watson's testimony at the contempt hearing in no way implicated Dorsey in her failure to appear at his trial on September 30, 1971, and in no way attacked Dorsey's credibility. To the extent that Watson's testimony impugned Hilton's credibility, the district judge found this to be non-prejudicial to Dorsey because he concluded that Hilton's testimony lent " . . no support to the Petitioner's case." Thus the district judge concluded:

"[A]lthough the action on the part of both the trial court and the prosecution in failing to disclose that a contempt hearing had been held should not be condoned, it cannot be considered a constitutional violation under the circumstances."

Further, the district court held that even if the failure to disclose was error, the error was harmless beyond a reasonable doubt within the meaning of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

On the basis of the record before us, we do not decide whether the district court applied the correct legal standard in determining that the failure of the prosecution and judge to disclose the

fact of the contempt hearing to Dorsey did not amount to a constitutional violation. We note that Dorsey's allegation that before the trial neither he nor his defense counsel was aware of the contempt proceedings against Ms. Watson is largely unsubstantiated in the record. As part of his appendix on this appeal, Dorsey has attached an affidavit of his counsel in the state trial which states in full:

I, IVOR R. JONES, Attorney at Law, being first duly sworn, depose and say:

1. That I represented Mr. Randolph Dorsey in a trial on a charge of extortion in the year 1971.

2. That during the trial, I became aware of the fact that the State's only witness, Juanita Watson, had been held in jail as a material witness. I was not advised that, in fact, she had been cited for contempt.

Dorsey himself filed no affidavit concerning his knowledge or lack of knowledge of Ms. Watson's contempt proceeding. On this record, it is unclear whether Dorsey or his counsel had knowledge of the incident to which Ms. Watson testified, or whether either of them was aware of the colloquy which took place between Ms. Watson and the state trial judge. Certainly if petitioner or his counsel had knowledge of the October 5 hearing or the incident which was testified to by Ms. Watson, and could have cross-examined her on this point at trial, the chance of any prejudice by the nondisclosure was greatly diminished.

Both the Michigan Court of Appeals and the district court, in rejecting Dorsey's claim that the failure to notify him of the contempt hearing amounted to a suppression of evidence in violation of his right to due process, relied upon the analysis employed by Judge Friendly in *United States v. Keogh,* 391 F.2d 138 (2nd Cir. 1968). In *Keogh,* the court held that there may be a constitutional deprivation of due process where there has been a failure to disclose evidence which, in hindsight, could have been put to not insignificant use by the defense even though the failure to disclose may not have been deliberate and the defendant has not requested the evidence. Under such circumstances, however, a new trial is required only where there is " . . . a substantially higher probability that disclosure of the evidence to the defense would have altered the result." *Keogh, supra,* at 148. See also *Evans v. Janing,* 489 F.2d 470 (8th Cir. 1973).

To our knowledge this circuit has not dealt at length with the legal propositions advanced in *United States v. Keogh, supra,* and we are satisfied that if in this case we are to pass upon the issues at all, it should be upon a more complete record than that before us here. Accordingly, the judgment of the district court, insofar as it dismisses the petition, is rereversed and the case is remanded for an evidentiary hearing on the merits of Dorsey's due process claims. Without limitation to the scope of that hearing, the district court should provide opportunity for petitioner and respondent to submit such evidence as they may desire, relevant to whether there was actual knowledge of Dorsey or his counsel of the contempt proceeding which was held prior to Dorsey's trial.

The judgment of the district court is, accordingly, affirmed in part, reversed in part, and remanded for further proceedings not inconsistent herewith.