**Randolph DORSEY, Petitioner,**

v.

**WARDEN, SOUTHERN MICHIGAN STATE PRISON, Respondent.**

Civ. A. No. 74–70924.

United States District Court, E. D. Michigan, S. D.

July 28, 1976.

Francis L. Zebot, Detroit, Mich., for petitioner.

Frank J. Kelley, Atty. Gen., Christine A. Derdarian, Asst. Atty. Gen., Lansing, Mich., for respondent.

## MEMORANDUM OPINION

GUBOW, District Judge.

RANDOLPH DORSEY filed this petition for a writ of habeas corpus on January 9, 1974 raising the claims *inter alia* that he had been denied the right to confront evidence against him and the right to due process of law by the state's failure to advise him about a contempt hearing involving the chief prosecuting witness at his criminal trial. This court granted the Respondent's motion to dismiss the petition on November 14, 1974 and DORSEY appealed. The Court of Appeals for the Sixth Circuit affirmed this court's order dismissing the denial of confrontation claim and remanded the cause for an evidentiary hearing regarding the due process claim. *Dorsey v. Warden*, 523 F.2d 590 (6 Cir. 1975).

The record presently before this court discloses the following facts. In 1971, RANDOLPH DORSEY was charged with extortion under state law as a result of a complaint by one JUANITA WATSON. WATSON claimed that DORSEY had forced her to solicit for prostitution to provide DORSEY with money. On the scheduled trial date, DORSEY, represented by court-appointed counsel, appeared before the Honorable Donald Freeman, Circuit Judge of Genesee County, and waived jury trial. The trial was then adjourned until the afternoon because of a conflict with defense counsel's schedule. When court reconvened, JUANITA WATSON was not present. The court adjourned the trial and subsequently issued a bench warrant for WATSON's arrest. DORSEY remained in pretrial incarceration since he had been unable to post bond.

The following morning, the prosecuting attorney and defense counsel appeared before the court and defense counsel requested dismissal of the charges. The prosecuting attorney suggested, however, that WATSON's absence may have been caused by "incrimination" or may have been engineered by individuals acting on behalf of DORSEY. Several police officers then testified about their efforts to locate WATSON. The court found that WATSON was a material witness, that the trial had previously been postponed at the request of the defendant, and that the defendant would not be denied his right to a speedy trial by a further short adjournment. The court instructed the prosecuting attorney to inform the defense and the court at least ten days prior to the new trial date if service of the

bench warrant had been made on WATSON and of the state's efforts to locate her.[1]

On October 5, 1971, JUANITA WATSON, having learned that she was sought by police, appeared before Judge Freeman. The prosecuting attorney assigned to DORSEY's case was also present. The court explained to WATSON that it would determine if she should be held guilty of contempt for her failure to return on the afternoon of September 30. The court then closely questioned WATSON regarding her nonappearance. WATSON stated that she had been "scared" to go back on the witness stand. On the morning of September 30, she had confided this fear to one EDDIE HILTON.[2] She repeatedly denied that anyone had threatened her with harm if she testified. After the hearing, she went to a neighborhood bar for some drinks with HILTON and one other unidentified man, apparently HILTON's friend. Later they drove to HILTON's hotel where she imbibed a considerable quantity of liquor. In response to the court's questions, WATSON denied the existence of any threats or coercion directed against her. She reiterated her fear of getting back on the witness stand. The court advised her that she was under a compulsion to take the stand and, in response to the court's questions, WATSON indicated several times that she would tell the truth at the trial. The court permitted her to go to Hurley Hospital for some surgery, sentencing her to thirty days for contempt.

DORSEY's trial began on October 27, 1971. WATSON was the chief witness for the prosecution. DORSEY took the stand and denied WATSON's version of the facts. EDWARD HILTON, the man who had gone drinking with WATSON on September 30, was the only other defense witness. Although WATSON did indicate during her trial testimony that she had been held in jail, the contempt hearing was not mentioned. The court found DORSEY guilty of extortion and sentenced him to fifteen to twenty years.[3]

The Sixth Circuit found that DORSEY's due process claim had two dimensions: 1) whether the trier of the facts had been impartial and 2) whether the failure to disclose the fact of the contempt hearing and the matters treated at the hearing to the defense constituted a denial of due process. The Sixth Circuit directed this court to determine if DORSEY had exhausted state remedies with regard to his first due process claim and to develop an evidentiary record regarding the second claim. The Sixth Circuit indicated that there was no Sixth Circuit case establishing a standard for relief in cases where the prosecution inadvertently fails to disclose evidence to the defense in a criminal trial. However, the court indicated that the holding of *United States v. Keogh,* 391 F.2d 138 (2nd Cir. 1968) might be adopted by this circuit. *Keogh* held that there may be a constitutional deprivation of due process where there is a nondeliberate failure to disclose evidence which, by hindsight, could have been put to "not significant use" by the defense. However, in cases of nondeliberate suppression, a new trial is required only where there is a substantially higher probability that disclosure of the evidence would have altered the final result.

Pursuant to the Sixth Circuit's direction, this court conducted an evidentiary hearing on January 29, 1976. DORSEY testified that he had been held in pretrial incarceration because of his inability to post bond and a parole violation hold, and had had no knowledge of the contempt hearing or the events discussed at the hearing. Former Genesee County Assistant Prosecutor Payette testified that he did not recall advising defense counsel about the contempt hearing nor did he recall defense counsel approaching him about the hearing. Mr. Payette

---

1. The transcripts of the September 30 afternoon session and the October 1 hearing were not part of the record before this court in the original proceeding.

2. The transcript of the hearing indicates that the trial court was acquainted with Hilton's name.

3. Dorsey's minimum sentence was later reduced to thirteen years.

stated that the circuit court history sheet would have contained some information about the hearing and that such sheets would have been available to the defense. Mr. Payette testified that, although he never informed defense counsel that WATSON was in jail, he believed that defense counsel had been aware of the fact. Mr. Ivor Jones, DORSEY's defense counsel, testified that he had not been aware of the contempt hearings and had no independent recollection of being present in court when the bench warrant issued or of WATSON's testimony at trial that she had been in jail. He stated that, in 1971, he did not know that a contempt hearing is routinely held when a witness who failed to appear in court is brought before the court.[4]

 This court, having heard the testimony of the witnesses at the evidentiary hearing and the arguments of counsel and having read the transcripts and briefs filed in this cause, makes the following findings:

1. Neither DORSEY nor his counsel were aware of the contempt hearing or the matters explored during the contempt hearing. While defense counsel may have been aware that WATSON was in jail, he had no way of knowing that she was in jail on a finding of contempt in the absence of notification by the prosecutor. The fact that the circuit court history may have contained a notation about the contempt hearing cannot be said to constitute constructive notice. Since Jones was the defense counsel of record for DORSEY, he should have had formal notice about all proceedings taking place in the criminal case.

2. Since the prosecuting attorney had suggested to the court at the October 1 hearing that WATSON's absence may have been caused by individuals acting on behalf of DORSEY, DORSEY and his counsel should have been advised of the contempt hearing and their presence secured. The trial court's order at the October 1 hearing

also placed a duty on the prosecutor to keep defense counsel informed.

3. The transcript of the contempt hearing reveals that the trial court, which subsequently conducted a bench trial in the criminal case, questioned JUANITA WATSON very closely and repeatedly about the existence of any threats or intimidation coming from DORSEY or anyone associated with him. While apparently aware that EDDIE HILTON would also be involved in the criminal trial, the trial court also questioned WATSON about her conversations and activities with HILTON on September 30. Had the defense been aware of the contempt proceedings, the court could also have questioned DORSEY about any alleged involvement in, or knowledge of, WATSON's failure to appear.

4. The trial court obtained WATSON's repeated assurances that she would appear and *tell the truth* at the criminal trial.

5. Petitioner's counsel stipulated at the evidentiary hearing that state remedies had not been exhausted with regard to the impartiality of the trial judge claim.

 Section 2254 of Title 28 United States Code provides that federal courts shall entertain petitions for writs of habeas corpus from state prisoners solely on the basis that they are held in custody in violation of the Constitution or the laws of the United States. A § 2254 claim must allege a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure". *DeBerry v. Wolff,* 513 F.2d 1336, 1338 (8th Cir. 1975) *citing Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). As the Sixth Circuit interpreted the *Keogh* test, the prosecution's nondeliberate failure to disclose information to the defense, which could have been put to significant use, may result in a deprivation of due process. *Dorsey v. Warden,* 523 F.2d at 594. The standard for granting relief for

---

4. At the evidentiary hearing, the testimony of Payette and Jones was not explicit and detailed because of the passage of time. For example, Jones did not recall being aware of Watson's incarceration in jail, but he stood on his prior affidavit that he had not known about the contempt hearing although he had known that Watson had been in jail.

nondisclosure, however, depends on the extent of the government's culpability. *See United States v. Miranda*, 526 F.2d 1319, 1325–1329 (2nd Cir. 1975). *Keogh* indicates that, where the failure to disclose is inadvertent, a new trial should be granted only when there is a substantially high probability that disclosure of the evidence would have altered the result. 391 F.2d at 138. In the matter pending before this court, such different result cannot be infallibly determined. If DORSEY or his counsel had been aware of the contempt proceedings, he could have moved either to retract his jury trial waiver or requested that another judge be assigned to conduct the bench trial. DORSEY might also have been able to dissipate any apparent suspicions held by the court that he had been involved in WATSON's nonappearance. At the trial, defense counsel would have been able to cross-examine WATSON closely regarding her apparent reluctance to testify. Since WATSON was the chief prosecuting witness, her credibility was critical. The defense could also have dispensed with HILTON as a defense witness in view of his involvement in WATSON's nonappearance. However, HILTON's testimony was not material to DORSEY's defense.

Trial courts, in the course of ordinary proceedings, become aware of information relating to other cases on their dockets, and it is presumed that trial courts can be fair to all parties despite any informally acquired knowledge gained regarding a particular case. DORSEY has admittedly not exhausted any claim that the trial court may not have been impartial as to him. However, the question before this court is not whether the trial court was impartial but, rather, whether DORSEY was prevented from utilizing important information in planning his defense. In view of the prosecutor's expressed suspicions that JUANITA WATSON's failure to return to court may have been engineered by DORSEY's friends, it seems clear that the failure to provide DORSEY and his counsel with the opportunity to be present when WATSON was brought before the court was fundamentally unfair. Matters highly relevant to DORSEY's defense were involved at the contempt hearing; i. e. the existence of any coercion directed at WATSON, her reluctance to testify, the apparent involvement of a defense witness in her nonappearance, and her assurances that she would tell the truth.

The court concludes that the failure to advise DORSEY and his counsel of the fact of the contempt hearing and to have them present when such matters were developed at the hearing constituted a violation of due process. Accordingly, the court will issue a writ of habeas corpus unless the State grants DORSEY a new trial within ninety days from the date of this order.