OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Brian M. Kutnar, appeals from his convictions for abduction and domestic violence following a trial by jury. We find no merit to his appeal.
In late 1994, appellant met and began dating the alleged victim in this case. For the next two years, appellant and the woman engaged in an "on again, off again" relationship. In January 1997, the pair moved in together at appellant's residence in the City of Euclid, Cuyahoga County, Ohio. Their relationship ended, however, in March 1997 after they had a domestic dispute which resulted in appellant being arrested and charged with domestic violence. Following this incident, the victim moved out of the house in Euclid. She and appellant had minimal contact with each other over the course of the next several months.
According to the victim's testimony at trial, she spent the evening of July 29, 1997 at her uncle's home in the City of Willowick, Lake County, Ohio. She left her convertible automobile parked overnight in the driveway of the residence. Around 8:00 a.m. the next morning, she went out to her car in order to leave. Upon doing so, the victim noticed a sticky substance coating the car's exterior windshield. She tried unsuccessfully to wipe the substance off the windshield. After hesitating for a moment, she started the engine and pulled out of the driveway.
As she drove through Willowick, the woman observed several things amiss inside her car, including a day planner in the front seat that had been moved. While looking in the rearview mirror, she also noticed that a portion of the boot flap was sticking up in the air. The boot flap separated the back seat of the convertible from the trunk space.
Upon noticing the raised flap, the victim pulled the car over to the side of the road in a residential neighborhood. She exited the driver's seat and then leaned her head into the backseat in order to examine the flap. At that moment, appellant's head suddenly popped up from the trunk area. The woman screamed in fright and began running away from the vehicle.
Appellant jumped out of the convertible and began chasing the victim as she yelled for help. Appellant quickly caught her and wrestled her to the ground. During the struggle, the victim's shirt and bra were ripped away from her body, leaving her naked from the waist up. Appellant eventually picked the woman up in his arms and started to carry her back to the car. As the victim continued to resist, appellant dropped her to the ground and proceeded to drag her the rest of the way back to the convertible. Once there, appellant forcibly tried to push the victim into the vehicle.
Several neighborhood residents witnessed and corroborated the events that took place outside of the car. At least two of them called 911 to report what was happening on the street. Another resident, Daniel Rhodes ("Rhodes"), walked outside of his house after being awakened by the victim's screaming. Upon seeing appellant trying to push the woman into the car, Rhodes ran out into the street and tackled appellant. Rhodes wrestled appellant to the ground and restrained him until officers from the Willowick Police Department arrived on the scene. The police thereafter arrested appellant.
During the subsequent investigation, the police found various items in the trunk of the convertible which did not belong to the victim. These included a knapsack, a roll of duct tape, and rope.
On September 8, 1997, the Lake County Grand Jury indicted appellant on one count of kidnapping in violation of R.C.2905.01(A)(3), one count of abduction in violation of R.C.2905.02(A)(2), and one count of domestic violence in violation of R.C. 2919.25(A). The indictment for domestic violence included a specification to the effect that appellant had previously been convicted of that offense, thereby raising the seriousness of the crime from a first degree misdemeanor to a fifth degree felony. At his arraignment, appellant entered a plea of not guilty to all of the charges.
Thereupon, the issue of competency was raised, and the trial court ordered that appellant be referred to the Lake County Psychiatric Clinic for an evaluation. Based on its evaluation, the clinic filed a written report in which it concluded that appellant was competent. On February 13, 1998, the trial court issued a judgment entry finding appellant competent to stand trial.
A trial by jury commenced on March 16, 1998. The state called seven individuals to the witness stand, including the victim, Rhodes, and other neighbors who had witnessed the incident.
Appellant testified on his own behalf during the presentation of the defense case. According to appellant, he and the victim had continued to have telephonic contact between March 1997 and July 1997. On July 28, 1997, the woman allegedly showed up at appellant's house in Euclid, and the two had sexual intercourse. Afterwards, appellant suggested that they should both be tested for the AIDS virus. Appellant claimed that the victim agreed to meet him on the morning of July 30, 1997 at a medical center in Willowick.
Appellant further testified that he walked to the medical center from his parents' home just before 8:00 a.m. on July 30, 1997. Shortly thereafter, the victim arrived in her convertible and told appellant that she no longer wanted to undergo the testing procedure. She then supposedly invited appellant to get into the car, and the two discussed the matter further while driving around Willowick. A heated argument ensued when the victim would not change her mind about the test. At some point, she allegedly stopped the car, and they both exited the vehicle. It was then that appellant chased and caught the woman as witnessed by the residents of the neighborhood.
Appellant testified that he was attempting to force the victim back into her car so that she would go to the medical center for the AIDS test. The gist of appellant's testimony was that he did this for the woman's own good. On cross-examination, appellant admitted that he ripped the victim's shirt and physically restrained her freedom of movement.
On March 19, 1998, the jury acquitted appellant of kidnapping, but found him guilty of abduction and domestic violence. At the sentencing hearing, the trial court ordered appellant to serve concurrent prison terms of three years and one year, respectively, for the abduction and domestic violence convictions. In addition, the trial court ordered appellant to serve any bad time or period of post-release control imposed on him in the future by the Parole Board.
From this judgment, appellant filed a timely appeal with this court. He now asserts the following assignments of error:
 "[1.] The trial court committed reversible error to the prejudice of the defendant-appellant when it failed to consider lesser included offenses.
 "[2.] The trial court committed reversible error and denied defendant-appellant his right to due process and a fair trial by excluding and failing to compel evidence offered by the defendant-appellant which was both relevant and established a motive.
 "[3.] The trial court erred to the prejudice of defendant-appellant's substantail [sic] right to a fair trial and due process of law by failing to admit relevant evidence, effectively denying him an opportunity to present a defense.
 "[4.] By sentencing the appellant pursuant to section 2967.11 of the Ohio Revised Code, as amended by Senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."
In his first assignment of error, appellant posits that the trial court committed reversible error by refusing to provide the jury with instruction to two lesser included offenses. According to appellant, the trial court should have instructed the jury on unlawful restraint as a lesser included offense of abduction and disorderly conduct as a lesser included offense of domestic violence.
The concept of lesser included offenses is recognized by the Ohio Rules of Criminal Procedure and the Revised Code. Crim.R. 31(C) provides in part:
 "When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense." See, also, R.C. 2945.74 (containing nearly identical language).
When the possibility of a lesser included offense is raised, the task of a trial court is two-fold. First, the trial court must determine what constitutes a lesser included offense of the crime charged. Second, the trial court must examine the facts of the particular case in order to ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense, but not the greater. State v. Kidder (1987),32 Ohio St.3d 279, 280.
The Supreme Court of Ohio has established a tripartite analysis for determining what constitutes a lesser included offense of the crime charged. Pursuant to this test, a crime is appropriately classified as a lesser included offense of another if all of the following apply: (1) the lesser offense carries a lesser penalty than the greater offense; (2) the greater offense can not, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
Even if a lesser offense is necessarily subsumed by a greater one, an instruction on the lesser included offense is not automatically given. There must be a basis for such an instruction arising from the evidence of a case.
In other words, a criminal defendant is entitled to an instruction on a lesser included offense only where the evidence warrants it.Kidder, 32 Ohio St.3d at 280. When examining the evidence presented, it is only where the trier of fact could reasonably find for the accused on one or more of the elements of the crime charged, and against the accused on the remaining elements, which by themselves form the lesser included offense, that an instruction on the lesser included offense is warranted. Id. at 281-282; State v. Bleasdale
(Sept. 6, 1996), Ashtabula App. No. 95-A-0047, unreported, at 4, 1996 WL 535283.
Thus, a trial court should give an instruction on a lesser included offense only when the evidence presented at trial is such that the jury could both reasonably acquit the defendant of the charges offense while convicting the defendant of the lesser included offense. The same test is applied when a defendant seeks an instruction on an inferior degree offense. State v. Tyler (1990),50 Ohio St.3d 24, 37; State v. Shane (1992), 63 Ohio St.3d 630,632; State v. Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported, at 4, 1997 WL 590789.
The Supreme Court of Ohio has stressed that the evidence at trial must reasonably support both an acquittal on the crime charged and a conviction for the lesser included offense. See,e.g., Shane, 63 Ohio St.3d at 632-633. When the evidence meets this test, the trial court must instruct the jury on the lesser offense. Id. at 632; State v. Loudermill (1965), 2 Ohio St.2d 79, syllabus. The failure to give an instruction on the lesser included offense in such circumstances amounts to reversible error. Kidder, 32 Ohio St.3d at 281; Loudermill, 2 Ohio St.2d 79, at syllabus. By contrast, when the evidence adduced at trial does not satisfy this test, a charge on the lesser included offense is not required. Shane, 63 Ohio St.3d at 632.
In the case sub judice, counsel for appellant filed proposed jury instructions in which she requested that the trial court charge the jury on unlawful restraint and disorderly conduct as lesser included offenses of abduction and domestic violence, respectively. The trial court declined to give the proposed instructions relating to unlawful restraint and disorderly conduct, thereby ensuring that the jury only considered the greater offenses of abduction and domestic violence as charged in the indictment.
Appellant now claims that the trial court's decision amounted to reversible error. We will examine each proposed tandem of greater and lesser offenses in turn.
Appellant was indicted for abduction in violation of R.C.2905.02(A)(2). This statute provides that "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to, or place the other person in fear[.]" Appellant requested an instruction on unlawful restraint as a lesser included offense of abduction. R.C. 2905.03
proscribes unlawful restraint by mandating that "[n]o person, without privilege to do so, shall knowingly restrain another of his liberty."
Abduction is a felony of the third degree, whereas unlawful restraint is a misdemeanor of the third degree. As a result, unlawful restraint carries a lesser penalty than abduction. Beyond this, a comparison of their respective elements demonstrates that abduction under R.C. 2905.02(A)(2) cannot ever be committed without unlawful restraint also being committed. Finally, abduction as defined by R.C. 2905.02(A)(2) contains two elements that are not required to prove the commission of unlawful restraint, to wit: (1) the use of force or a threat; and (2) the creation of a risk of physical harm to or the placement of such victim in fear.
Applying the three-pronged analysis of Deem, it is apparent that unlawful restraint is a lesser included offense of abduction as charged in this case. Indeed, this court has previously expressed this view. See Bleasdale, 1996 WL 535283, at 4.
Having determined that unlawful restraint is a lesser included offense of abduction as proscribed by R.C. 2905.02(A)(2), the relevant inquiry is whether the evidence produced at trial warranted a jury instruction on the lesser offense. Upon review, we conclude that the instruction was not required because the jury could not have reasonably acquitted appellant of abduction, while convicting him only of unlawful restraint.
The record is replete with overwhelming evidence that appellant used force on the victim which, in the process, created a risk of physical harm to her or placed her in fear. These are the two additional elements by which unlawful restraint is transformed into the greater offense of abduction.
During her testimony at trial, the victim indicated that she ran in fear when she realized that appellant had been hiding in the trunk area of the convertible. As she ran, the woman screamed loudly for help. Appellant, however, caught her from behind and wrestled her to the ground. The victim further testified that appellant ripped her shirt and bra off during this struggle. Appellant then dragged her forcibly back to the car. When the woman placed her hands against the vehicle to resist being shoved inside, appellant punched her in the back of the head.
A number of other witnesses to the altercation testified at trial. They all corroborated that appellant used force on the victim under such circumstances that it was likely to create a risk of physical harm to her or to place her in fear. Alex Kukwa, a neighbor, testified that he saw appellant forcibly attempting to push the victim into the automobile as she screamed "Please help me, please help me." Connie Bellew, another neighbor, witnessed appellant chase after the woman as he pulled her hair and tugged at her shirt. Rhodes observed appellant grab the victim by the hair and attempt to shove her into the parked convertible.
Even if we disregarded all of the aforementioned evidence, appellant's own testimony at trial served to eliminate the need for an instruction on the lesser included offense of unlawful restraint. On cross-examination, appellant admitted the following: that he chased after the victim as she ran from the car; that the woman was screaming for help; that he ripped her shirt during the ensuing struggle; that he picked her up in his arms against her will; and that he forcibly brought her back to the vehicle.
After reviewing the transcript, it is apparent that the state introduced overwhelming and substantially uncontroverted evidence that appellant used actual force on the victim. Moreover, appellant exerted this force in such a way as to create a risk of physical harm to the woman, thereby placing her in fear. The jury could not have reasonably acquitted appellant of abduction, while convicting him only of the lesser included offense of unlawful restraint. See, e.g., Bleasdale, 1996 WL 535228, at 4 (holding that the state's evidence clearly supported the charge of abduction, as opposed to unlawful restraint). Hence, the trial court did not err by refusing to instruct the jury on unlawful restraint.
Appellant also claims that the trial court erred by refusing to charge the jury on disorderly conduct as a lesser included offense of domestic violence. The grand jury indicted appellant for the latter offense in violation of R.C. 2919.25(A). This statute mandates that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant proposes that disorderly conduct as codified in R.C. 2917.11(A)(1) is a lesser included offense of domestic violence. R.C.2917.11(A)(1) provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another, by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"
This court has previously held that disorderly conduct under R.C. 2917.11(A)(1) may be considered a lesser included offense of domestic violence. See State v. Amos (Jan. 15, 1988), Lake App. No. 12-088, unreported, 1988 WL 4622. In doing so, we concluded that it is not significant that the common elements of the two offenses are not phrased in identical statutory language because their commonality is implied in the conduct constituting the offenses. Id. at 4.
We must clarify our previous holding in Amos in one respect. Specifically, only the minor misdemeanor version of disorderly conduct is a lesser included offense of domestic violence. Disorderly conduct as a fourth degree misdemeanor requires proof of an additional element, to wit: the offender persists after reasonable warning or request to desist or the offense is committed in the vicinity of a school. See R.C. 2917.11(E). This element is not required to prove a charge of domestic violence. Consequently, the greater offense of domestic violence can be committed without simultaneously committing disorderly conduct as a fourth degree misdemeanor, thereby precluding the possibility that the latter is a lesser included offense of the former. SeeState v. Burgess (1992), 79 Ohio App.3d 584, 587, citing State v.Reynolds (1985), 25 Ohio App.3d 59, 60.
Disorderly conduct as a minor misdemeanor under R.C.2917.11(A)(1) is, therefore, the lesser included offense of domestic violence. Other appellate courts have reached the same conclusion. See, e.g., Burgess, 79 Ohio App.3d at 588; State v.Hunt (Mar. 18, 1996), Stark App. No. 95CA0226, unreported, at 6, 1996 Ohio App. LEXIS 1275.
Having determined that the minor misdemeanor version of disorderly conduct as proscribed by R.C. 2917.11(A)(1) can be a lesser included offense of domestic violence, the relevant inquiry becomes whether the evidence warranted a jury instruction on the lesser offense. Once again, we conclude that the instruction was not required because the jury could not have reasonably acquitted appellant of domestic violence, while convicting him only of disorderly conduct.
The elements of domestic violence that are not present in the disorderly conduct statute are as follows: (1) to cause or attempt to cause physical harm; (2) to a family or household member. In addition, the state is required to prove that the defendant acted "knowingly" in order to support a conviction for domestic violence under R.C. 2919.25(A), whereas disorderly conduct only requires the mens rea element of recklessness.
As stated previously, an instruction on a lesser included offense is warranted only where the trier of fact could reasonably find for the accused on one or more of the elements of the crime charged, and against the accused on the remaining elements, which by themselves form the lesser offense. Thus, appellant was entitled to a jury instruction on the minor misdemeanor version of disorderly conduct only if the jury could have reasonably found for him on at least one of the additional elements contained in the domestic violence statute.
Upon review, we determine that the jury could not have reasonably sided with appellant on any of these elements. There was a plethora of evidence to suggest that appellant caused or attempted to cause physical harm to the victim as he dragged her forcibly back to the car. The woman testified that she received cuts and scrapes while struggling to break free from appellant's grip. She also indicated that appellant struck her while attempting to push her inside the vehicle. Beyond this, the various neighbors who testified at trial corroborated that appellant grabbed her hair, arm, and shirt during the incident. All of this evidence established "physical harm" as that term is defined in R.C. 2901.01(A)(3).[1]
It was also uncontroverted that the victim was a "family or household member" as that term is defined by R.C. 2919.25(E). The evidence demonstrated that appellant cohabitated with her within one year prior to the date of the alleged commission of the offense. See R.C. 2919.25(E)(2).
Finally, the evidence supported a finding that appellant acted knowingly, rather than just recklessly. Appellant had to have known that his conduct would "probably cause a certain result" or would "probably be of a certain nature." R.C. 2901.22(B) (defining "knowingly" as a culpable state of mind). Again, appellant's own testimony, especially on cross-examination, supported this conclusion.
Given this evidence, the jury could not have reasonably acquitted appellant of domestic violence, while convicting him only of the minor misdemeanor version of disorderly conduct. Hence, the trial court did not err by refusing to instruct the jury on the latter offense.
Appellant was not entitled to have the jury instructed on either unlawful restraint or disorderly conduct. The evidence simply did not warrant a jury charge on these lesser included offenses. The first assignment is not well-taken.
In his second assignment of error, appellant challenges two evidentiary decisions made by the trial court. We will examine each in turn.
Initially, appellant maintains that the trial court erred by refusing to allow the defense to present evidence that the victim was working as a prostitute in July 1997. By not allowing such evidence, appellant claims that his main defense theory was irreparably crippled.
In order to understand this proposed error, it is necessary to review the position that the defense wanted to put forward at trial. According to the defense, appellant and the woman met on July 28, 1997 at appellant's residence in Euclid. After engaging in consensual sexual intercourse, the victim revealed to appellant that she was working for a professional escort service. In the guise of an escort, she would meet with a given customer at a designated location and engage in sexual acts for money. Upon being informed about this new line of work, appellant insisted that they go to a health clinic for the purpose of having an AIDS test. The victim supposedly agreed to the testing, and the two arranged to go to the clinic on the morning of July 30, 1997.
At the outset of the trial, the state made an oral motion inlimine. Pursuant to this motion, the state requested that the defense be prohibited from making any reference to the fact that the victim allegedly worked as an escort at the time the offenses took place. The trial court granted the motion.
Consequently, defense counsel was barred at trial from asking the woman about her line of work on cross-examination. In addition, the defense was unable to introduce videotape into evidence. The videotape depicted the victim meeting another man at a motel room. The man was a private investigator hired by appellant. On the videotape, she did not perform any sexual acts for money, but she did discuss her work as an escort. The defense wanted to introduce the videotape into evidence to substantiate that the victim was working as an escort during the time in question. In light of the trial court's ruling on the motion inlimine, the defense simply made a proffer of the videotape at the close of the evidence.
A trial court has broad latitude in determining the admissibility of evidence in any particular case. In this regard, the Supreme Court of Ohio has made the following observation:
 "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164.
It is axiomatic that the admission or exclusion of evidence rests within the sound discretion of the trial court. Id.; State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its analysis to whether the lower court abused its discretion. State v. Finnerty (1989),45 Ohio St.3d 104, 107. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably.State v. Montgomery (1991), 61 Ohio St.3d 410, 413;State v. Adams (1980), 62 Ohio St.2d 151, 157.
In the instant matter, the trial court excluded the evidence on the ground that whether the victim was employed as a paid escort was irrelevant to the proceedings. Appellant contends that such evidence was relevant and, therefore, should have been admissible.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In essence, Evid.R. 401 establishes the threshold requirement that evidence must meet in order to qualify for admissibility. State v. Comstock (Aug. 29, 1997), Ashtabula App. No. 96-A-0058, unreported, at 10, 1997 WL 531304.
As a general matter, relevant evidence is admissible, whereas irrelevant evidence is not. See Evid.R. 402. Even relevant evidence, however, may be excluded under those circumstances set forth in Evid.R. 403.
The crux of appellant's position is that he needed to introduce evidence that the victim was an escort because that explained why they met on July 30, 1997. In essence, appellant suggests that such evidence was relevant because it made it more probable than not that his version of events was truthful, to wit: the victim voluntarily met him on the morning of July 30, 1997 to go for the AIDS test.
We disagree. Appellant was not denied the opportunity to present his defense theory at trial. To the contrary, appellant was permitted to testify that he and the woman had engaged in consensual intercourse on July 28, 1997. He was also able to tell the jury that they had agreed to meet on July 30, 1997 in order to undergo an AIDS test at a local health clinic.
Thus, the defense did present evidence to suggest that the victim had voluntarily gone with appellant on the morning in question. Appellant was simply barred from mentioning that he wanted to go for an AIDS test because the victim had allegedly told him about her work as an escort. Whether or not she was working as an escort did not make it more probable than not that appellant was being truthful in his testimony.[2]
Indeed, the real issue was not whether the initial meeting was voluntary, but rather what transpired when the victim exited the car. Her alleged employment with the escort service did not change the criminality of appellant's conduct in chasing her down and dragging her back to the vehicle.
Upon review, we conclude that the trial court did not abuse its discretion in refusing to allow the defense to introduce evidence relating to the victim's work as an escort. The fact that she may have been working as an escort did not make the existence of any fact that was of consequence to the determination of the action more probable or less probable. Evidence of the victim's occupation was not relevant to the ultimate determination of whether appellant engaged in criminal conduct after he met her on the morning of July 30, 1997.
Under the second assignment of error, appellant next challenges the trial court's denial of a pretrial motion to compel the victim to submit a saliva sample. In this motion, appellant asked the trial court to order the victim to submit a saliva sample to the Lake County Crime Laboratory for purposes of analysis. The motion read in part:
 "Mr. Kutnar is requesting that this Court compel [the victim] to provide the Lake County Crime Lab with a saliva sample analysis so that Mr. Kutnar may compare the results with evidence that is currently in his possession. The saliva analysis evidence is essential to Mr. Kutnar's defense in that it will prove that Mr. Kutnar and [the victim] were in an ongoing relationship at the time of the alleged kidnapping, abduction and domestic violence."
The motion did not specify what evidence appellant had "in his possession." By examining the record, however, we were able to determine that appellant was referring to a mattress cover, a bath towel, and a drinking glass. The mattress cover and towel were allegedly stained with the woman's blood on July 28, 1997 when she and appellant had consensual sexual intercourse. The victim then supposedly drank from the glass afterwards.
From what we can glean, appellant apparently wanted to cross-check DNA obtained from the woman's saliva sample with DNA that could be recovered from the aforementioned items. The point of this exercise was to prove "that Mr. Kutnar and * * * [the victim] were in an ongoing relationship at the time of the alleged kidnapping, abduction and domestic violence."
The trial court denied the motion on the ground that an analysis of her saliva would have no probative value "which would be dispositive of any issue related to the charges" against appellant. We agree.
Even if the victim and appellant had engaged in consensual sexual intercourse on July 28, 1997 as alleged, we fail to see how this would have served as a viable defense to the charges in the indictment. The issue at trial was appellant's conduct in pursuing and capturing the victim after her flight from the car on July 30, 1997. It was not whether he and the woman had intercourse two days earlier.
Moreover, as noted previously, appellant was able to testify that he and the victim had a voluntary sexual encounter on July 28, 1997. During this testimony, the defense introduced the mattress cover, the towel, and the glass into evidence without any objection from the prosecution. Therefore, appellant's version of events was before the jury for consideration, and the trial court did not abuse its discretion in denying the motion to compel the victim to provide a saliva sample.
The trial court did not err in ruling on either the state's motion in limine or on the defense motion to compel. The second assignment is without merit.
In his third assignment of error, appellant proposes that the trial court denied him due process of law by restricting defense counsel's cross-examination of the victim. According to appellant, the trial court violated his constitutional right to confront witnesses against him through its refusal to allow any questions on cross-examination relating to her alleged employment with an escort service.
The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The right embodied by the Confrontation Clause applies to the states through the Due Process Clause of the Fourteenth Amendment.Pointer v. Texas (1965), 380 U.S. 400, 406. See, also, State v.Madison (1980), 64 Ohio St.2d 322, 325. The Ohio Constitution contains an analogous provision. Section 10, Article I states that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel * * * [and] to meet the witnesses face to face[.]"
Although cross-examination of a witness is a matter of right, the extent of such cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. State v. Green (1993), 66 Ohio St.3d 141, 147, citing Alford v. United States (1931), 282 U.S. 687, 691. Thus, a criminal defendant is not entitled to question an adverse witness in an unrestricted manner.
In the case at bar, appellant claims that the jury would have assessed the victim's credibility differently had his counsel been able to elicit testimony on cross-examination regarding her employment with an escort service. From appellant's perspective, the right to cross-examine the victim should have included the right to impeach her credibility by exposing that she performed sexual favors on men in exchange for money.
Evid.R. 608 governs the use of character and conduct evidence for the purpose of impeaching the credibility of a witness. The rule applies in both civil and criminal litigation, and it applies with equal force to any party or nonparty witness. Pursuant to Evid.R. 608(A) and (B), the credibility of a witness may be attacked or supported by opinion evidence, reputation evidence, or specific instances of conduct provided that such evidence relates solely to the witness' character for truthfulness or untruthfulness.
Although appellant makes a broad-based assertion that his counsel should have been permitted to impeach the victim's credibility, he does not specifically explain how this objective would have been achieved by questioning the woman about her work as an escort. Beyond this, appellant fails to draw any correlation between the victim's employment as an escort and her veracity or lack thereof.
Again, we would note that appellant's own testimony served to support his convictions for abduction and domestic violence. Even if the jury would have discounted the victim's credibility to some degree because she worked as a professional escort, it can not be said that the outcome of the trial would have been different in light of the admissions made by appellant on the witness stand.
Finally, this court does not agree that defense counsel was so severely limited in her cross-examination of the victim that it constituted a deprivation of the due process right to confront adverse witnesses. Counsel was, in fact, given broad latitude to cross-examine the woman. For instance, counsel inquired extensively into the prior relationship between the victim and appellant while they were dating each other.
Beyond this, counsel successfully impeached the victim by undercutting her contention that she had not been in contact with appellant just prior to the incident on July 30, 1997. Counsel accomplished this by introducing a copy of a telephone bill demonstrating that eleven calls to appellant were made from the victim's residence between July 25, 1997 and July 29, 1997.
Finally, counsel was able to question the woman regarding the events that occurred on July 30, 1997. Specifically, counsel hammered away at the prosecution's theory of the case by suggesting through her questions that the victim had voluntarily met appellant on the morning in question to have the AIDS test performed at the medical center.
Appellant was not deprived of his constitutional right to confront an adverse witness simply because the trial court barred any inquiry into the victim's alleged work as an escort. The trial court was within its discretion to limit the scope of defense counsel's cross-examination of the victim in this regard. The third assignment is not well-taken.
In his fourth and final assignment of error, appellant asserts that the trial court relied on unconstitutional statutes to impose an unlawful sentence upon him. Specifically, appellant challenges the constitutionality of the bad time and post-release control provisions of R.C. 2967.11 and R.C. 2967.28, respectively. In support of his position, appellant invokes various constitutional grounds, including the right to a trial by jury, the right to counsel, separation of powers, double jeopardy, equal protection, and procedural and substantive due process of law.
Appellant does not allege and the record does not reflect that he has been subjected to the actual imposition of either bad time or post-release control. Rather, appellant brings this appeal based on the fact that he may be so subjected at some indeterminate point in the future.
Under these circumstances, this court has previously held that a convicted defendant lacks standing to bring a constitutional challenge to R.C. 2967.11 and R.C. 2967.28. See State v. Spikes
(Sept. 4, 1998), Lake App. No. 97-L-158, unreported, at 2, 1998 WL 637852; see, also, State v. Reeves (Sept. 25, 1998), Lake App. No. 97-L-206, unreported, at 1, 1998 WL 684253. Appellant has failed to establish that he has suffered a concrete injury due to the operation of either statute.
In light of Spikes, the fourth assignment is meritless. Appellant, however, is not barred by res judicata or collateral estoppel from again challenging the constitutionality of the bad time provisions of R.C. 2967.11 or the post-release control mechanism of R.C. 2967.28 at some point in the future under the manner prescribed by this court in Spikes.[3]
Based on the foregoing analysis, the assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed.
 __________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] This statute defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
[2] The victim's credibility was also at issue because she testified at trial. Indeed, as will be discussed infra, the woman's credibility was impeached on the question of whether she and appellant had been in contact just prior to the incident in question.
[3] Indeed, this court has recently held that R.C.2967.11 is unconstitutional on separation of powers and due process grounds. See White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported, 1999 Ohio App. LEXIS 1230. Our judgment in White, however, has been stayed by the Supreme Court of Ohio pending an appeal to that court. The defendant in White
challenged the constitutionality of R.C. 2967.11 through an original action for a writ of habeas corpus after he actually began serving one hundred twenty days of bad time as ordered by the Parole Board.