

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00253-CR

JOE DALE JOHNSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 48,790-C

----------

## DISSENTING OPINION ON EN BANC RECONSIDERATION

----------

Respectfully, I cannot join the majority in the conclusion that Appellant was not entitled to offer evidence that the complainant had been sexually abusing his younger sister for several years. Appellant's entire defense was an attempt to show that the State was creating the false impression that the complainant was a victim, a child who was emotionally distraught over being victimized and sufficiently innocent to be embarrassed to discuss it. The State wanted to create

the impression with the jury that the complainant was truthful; Appellant wanted to show the jury that the complainant was a liar. Appellant's position throughout the trial, which he has maintained on appeal, was that the State created the false impression that the complainant was innocent in sexual matters.

The complainant was a twelve-year-old boy who was participating in court-ordered counseling for sexually molesting his ten-year-old sister over several years. At trial, Appellant sought to elicit testimony that the complainant had been adjudicated delinquent for sexually molesting his ten-year-old sister and, among other things, was in court-ordered counseling as a result. On appeal, Appellant argues that the excluded evidence (1) was admissible to rebut the false impression the State had left with the jury regarding the primary reason the complainant was in counseling, thereby opening the door for the sexual abuse evidence; (2) impeached the complainant's testimony that his guilt in being the victim of sexual abuse was relieved when he made his outcry; and (3) supported the defense's theory that the complainant had fabricated the abuse allegations against Appellant to get attention and sympathy for himself. In the trial court, Appellant offered the evidence on the basis that under the Sixth Amendment, cross-examination is the fundamental right of a defendant, affecting due process. He argued that the evidence showed the complainant's mental state at the time he made the outcry and what he was in counseling for. Appellant also argued that the complainant's past sexual behavior could be motive or bias for making

2

the outcry, not only for deception, but to get attention, and that the evidence was admissible to show the complainant's knowledge of sexual matters.

In his first issue, Appellant contends that the trial court erred by excluding evidence that the complainant had sexually assaulted his younger sister and that the trial court thereby violated Appellant's rights under the Sixth Amendment and Due Process Clause and rules of evidence 404(B) and 412. Appellant argues that "[t]he evidence that the alleged victim had sexually molested his little sister was admissible because the State left a false impression with the jury during its direct exam of the alleged victim and because it was admissible to show his mental status at the time of his alleged outcry."

During voir dire, the State appropriately inquired about veniremembers' training in dealing with sexual abuse. That inquiry developed into a discussion of children's varying behaviors in response to having been sexually abused, including their reluctance to admit it or to talk about it. The State asked veniremember Glasgow, a teacher, what kind of evidence she might expect to see in a child sexual abuse case. Glasgow responded that direct evidence might not be available but that evidence might be adduced through counseling. The prosecutor continued to discuss the subject with Glasgow, suggesting that the perpetrator might make sure there were no eyewitnesses and suggesting that there might or might not be DNA evidence, video, or a confession.

Veniremember Taylor said that she had spent eleven years working primarily in the children's psychiatric units of two hospitals. The prosecutor

3

asked her to go into detail about her experiences in the children's psychiatric units and to explain how children might react to their abuse. Next, he asked veniremember Humphrey, who also had extensive experience working with youngsters in the mental health field, to compare his experiences with Taylor's.

Veniremember Lerew had a master's degree in counseling and worked with children and adolescents. The prosecutor asked her to explain the behaviors she encountered "after children have been victimized."

The prosecutor also engaged in extensive discussion of intrafamilial sexual abuse, issues of the child's credibility, and the effect of the abuse on the child. Again, the subjects of counseling and a victimized child's difficulty in discussing his or her abuse were introduced during the State's voir dire.

In a pretrial hearing, the trial judge announced that he had reviewed the complainant's juvenile file. He noted that the complainant had been placed on deferred adjudication probation. The trial judge referred to it as "another probationary disposition" and quoted from the documents before him:

> The Court defers its decision on registration requirement until juvenile has completed an approved sex offender treatment as a condition of probation or commitment to the Texas Youth Commission. The Court retains jurisdiction to require or to excuse registration at any time during the treatment program or on successful or unsuccessful completion.

That particular order was entered July 18, 2008. The trial judge said that he would not allow the defense to "get into those matters" because "the outcry

4

was made well before the allegation of charges against the juvenile in a totally unrelated matter."

In his opening statement, the prosecutor asked the jury to "do [their] best to look at this through the—the lens of a 12, 13-year-old boy." And the prosecutor also asked them to look through the lens of a fifty-year-old pervert. Appellant, in his opening statement, responded,

> You're going to see that this witness, this 13, almost 14-year-old witness, is not your regular, normal 13, almost 14-year-old boy. And the D.A. is going to want y'all to base y'all's decision on this witness and potentially send my client to prison for the rest of his life.

The State called the complainant's father, R.H., as its first witness. The State touched on R.H.'s knowledge of the complainant's having "looked at pornography." The defense, on cross-examination, brought out that the complainant had a habit of watching pornography, but, at the same time, R.H. said that he had caught the complainant watching pornography only once and that he did not think the complainant had a problem with pornography. According to his father, the complainant had viewed pornography at least since he was ten years old. R.H. testified that the complainant was being bullied at school, was suffering from depression, had a stressful relationship with his parents, and had been caught shoplifting. R.H. testified that those problems and the pornography issue were the reasons that he and his wife had placed the complainant in counseling, although, when asked if the complainant was in counseling before

5

April 2007, R.H. testified that he could not remember when counseling began. The following exchange occurred before the jury on cross-examination:

> Q. Okay. And so he—you would agree with me that during the fall of 2007, including November of '07—November of 2007, he was dealing with a lot of issues, correct?
>
> A. There were issues, yes.
>
> Q. And he was having emotional difficulties, correct?
>
> A. Yes.

Despite the trial court's pretrial conclusion that the complainant's outcry was made long before his sister's allegations of sexual misconduct against him, the complainant testified outside the presence of the jury that he had sexually abused his younger sister both before and after Appellant's sexual assaults on him. The complainant also testified that his parents put him in counseling because he was sexually abusing his sister and that they did not know of Appellant's alleged sexual offenses against the complainant when the counseling began: "They did not know about sexual abuse with [Appellant], but they knew about sexual abuse of my sister. They had guessed what was happening and they wanted it to stop. . . . And they were trying to find out through the counselor if I had or not." There was also evidence that the complainant received court-ordered counseling as a result of his sexual abuse of his younger sister over several years. Sexual abuse of his sister was one of the things that the complainant was struggling with in November 2007 and that contributed to his emotional difficulties.

6

Outside the presence of the jury, the complainant testified to the sexual abuse of his sister, but in the jury's presence, he testified that Appellant had sexually abused him. He also testified about his use of pornography and stealing. He said that he had watched pornography for a long time. But the complainant also testified that he had gone four months without watching pornography until Appellant influenced him to start watching pornography again. The complainant further testified that he was angry at Appellant because Appellant had let him play with a Nintendo DS that had been donated to the church but then took the DS away from him. Then the complainant testified,

Q. At some point you made the decision to tell someone about the sexual acts [by Appellant against the complainant]?

A. Yes.

Q. Why did you decide to do that?

A. Because after the DS wasn't allowed to come to the teen group, I was at first pretty angry that I didn't get the DS like I wanted, but then I got to thinking about it and then I thanked Jimmy for not letting us have it. That was the teen leader that didn't allow it to come through. And I told him that I was thankful for it[,] and he said that—why are you glad that that didn't happen? I said, well, let's just say I can't tell you. And he said, well, that sounds a lot like something that happened to me.

Q. And then—and then did you tell him what happened to you?

A. Yes.

Q. Did you tell him everything?

A. Yes.

Q. How did you feel when you told him?

7

A.     I felt better, like a weight off my shoulders . . . .

The State argues that the rules of evidence and the family code prevented impeachment by a juvenile adjudication and that the evidence was not relevant to Appellant's theory of fabrication.  But the Texas Court of Criminal Appeals has set out a hierarchy for situations in which there is a conflict between the caselaw and its rules.  Rule of evidence 101(c) states that in criminal cases,

> [h]ierarchical governance shall be in the following order:  the Constitution of the United States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these rules, and the common law.  Where possible, inconsistency is to be removed by reasonable construction.[1]

The Texas Court of Criminal Appeals addressed the appropriate balancing of interests between rule of evidence 403 and a defendant's right to confront and cross-examine his accuser and to present his defense in a sexual assault case in *Hammer v. State*:

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence.  Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.  And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a

---

[1]Tex. R. Evid. 101(c).

witness's specific bias, motive, or interest to testify in a particular fashion.[2]

The *Hammer* court concluded that "the constitution is offended if the state evidentiary rule would prohibit [a defendant] from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."[3]

Similarly, rule of evidence 609(d) states,

Evidence of juvenile adjudications is not admissible . . . under this rule *unless required to be admitted by the Constitution of the United States or Texas.*[4]

That is, while rule 609(d) explicitly prevents the use of evidence of juvenile adjudications, that same rule likewise explicitly bows to the supremacy of the federal and state constitutions.[5] When an appellant can show a logical connection between a witness's testimony and evidence of his juvenile record demonstrating bias and motive, then excluding such evidence violates the appellant's rights to confront and cross-examine the witnesses against him.[6]

---

[2]296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (footnotes omitted).

[3]*Id.* at 562–63.

[4]Tex. R. Evid. 609(d) (emphasis added).

[5]*Id.*; *Irby v. State*, 327 S.W.3d 138, 147 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 904 (2011).

[6]*See Davis v. Alaska*, 415 U.S. 308, 316–19, 94 S. Ct. 1105, 1110–12 (1974); *Irby*, 327 S.W.3d at 140.

The majority states that because Appellant elicited R.H.'s testimony regarding who initiated counseling and why, Appellant was not allowed to impeach him, despite the complainant's testimony directly contradicting R.H. Although the court order placing the complainant in counseling was entered after the date he began counseling, that does not mean that counseling was not initiated, at least in part, because the complainant was sexually abusing his sister, as he himself testified outside the presence of the jury. Was it because someone was already investigating the abuse of the sister? Was it because the case against the complainant had already been filed? The complainant himself testified that his parents "knew about sexual abuse of [his] sister. They had guessed what was happening and they wanted it to stop. . . . *And they were trying to find out through the counselor if [the complainant] had or not.*" [Emphasis added.] There is a big difference between the complainant's having been in counseling because of tensions with his parents, bullying, and depression and counseling because he had been sexually abusing his sister for years and his parents wanted it to stop. When Appellant was not allowed to correct the false impression left by the testimony of the complainant's father, he was denied due process.

In presenting its case and in jury argument in the trial court, the State repeatedly referred to the reluctance of a boy the complainant's age to admit to the sexual acts that he claimed Appellant committed against him, essentially natural shyness to speak of sexual matters. Further, the State repeatedly spoke

10

of the grooming that would cause an innocent young man to become the victim of a sexual predator. The prosecutor began the State's rebuttal final argument by reminding the jury that he had told them during opening statement that "this case is about a deviant man who took sexual advantage of a young boy . . . [,] how [Appellant] took sexual advantage of [the complainant] for [Appellant's] own pleasure and . . . manipulated [the complainant,] . . . and these are the aftereffects that you've heard about this week." Final argument continued in this vein until the very end.

The State left the impression with the jury that the complainant's emotional problems, watching pornography, conflict with his parents, and need for counseling all arose as a result of his victimization by school bullies and by Appellant, who caused him to participate in sexual activities. This was a false impression that Appellant was entitled to rebut[7] as part of his fundamental due process right to confront and cross-examine witnesses against him in challenging the State's case.[8]

---

[7] *See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006) (holding that exclusion of evidence showing the defendant's remorse violated due process by preventing defendant from rebutting the State's case when the State left jury with false impression and emphasized it).

[8] *See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986)) (internal quotations and citations

11

The United States Supreme Court said in *Pointer v. Texas*,

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.  Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.[9]

Appellant was entitled to present his defense.  As a fundamental right, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.  The complainant had already been adjudicated delinquent for sexually assaulting his younger sister.  He was not particularly remorseful for that conduct, and his actions resulted in strained relations with his parents and the need for counseling.  When Appellant tried to inform the jury that the trial court had ordered counseling as a condition of the complainant's probation, he was not allowed to do so.  Nor was Appellant allowed to show that the parents had sought counseling for the complainant because he was sexually abusing his sister, as the complainant testified outside the jury's presence, and they wanted

---

omitted)); *see also California v. Trombetta*, 467 U.S. 479, 486 n.6, 104 S. Ct. 2528, 2532 n.6 (1984) ("In related cases arising under the Sixth and Fourteenth Amendments, we have recognized that criminal defendants are entitled to call witnesses on their own behalf and to cross-examine witnesses who have testified on the government's behalf.")  (citations omitted); *Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) ("[T]he trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial.").

[9]380 U.S. 400, 405, 85 S. Ct. 1065, 1068 (1965).

the sexual abuse to stop. But the complainant and his father were allowed to suggest to the jury that the complainant had needed and undergone counseling solely because he had been victimized by bullies and by Appellant, ignoring the admitted years of sexual abuse by the complainant against his younger sister before the alleged sexual abuse by Appellant occurred.

The complainant was mad at Appellant, and, having been adjudicated delinquent for sexually assaulting his younger sister, he knew firsthand or should have known how damning and indefensible an accusation of sexual assault could be. Appellant was entitled to correct the misleading characterization of the complainant that the State had presented to the jury, or, at a minimum, to present to the jury his version of the story and allow the jury, as the trier of fact, to determine what the true facts were. But the trial court impermissibly limited Appellant's right to cross-examine both the complainant and other witnesses against Appellant and to present evidence. Consequently, I would hold that the trial court abused its discretion by not allowing Appellant to cross-examine the complainant and other adverse witnesses with evidence of the complainant's prior sexual victimization of his little sister.

Rule of appellate procedure 44.2(a) provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not

13

contribute to the conviction or punishment."[10]   Appellant was not allowed to present his defense to the jury in any sense other than argument and innuendo. He was not allowed to offer substantive evidence to rebut the picture of the complainant painted by the State and to explain the bases of Appellant's assertion that the complainant was not the shy innocent who was devastated by sexual abuse requiring counseling to repair the emotional damage.  No scientific evidence, no witness, no physical evidence, and no admission otherwise supported the complainant's allegations.  It was simply a swearing match.  I cannot say beyond a reasonable doubt that the error did not contribute to Appellant's convictions or punishment on the two remaining counts; I would therefore hold this error harmful.

The State's questioning of the complainant and his father painted an incomplete and misleading picture of the complainant and the circumstances of his outcry.  By developing the testimony as it did, the State opened the door to evidence that could have accurately conveyed why the complainant was in counseling, what motivation he may have had to make up a false accusation against Appellant, and the degree to which he understood sexual matters and to which he personally appreciated legal consequences imposed upon sex offenders.

---

[10]Tex. R. App. P. 44.2(a).

14

It is not my position that this court should signal a green light for Appellant to explore in detail the complainant's sexual exploits or for other litigants in similar cases to explore in detail the sexual history of the complainants in those cases. It is the fact that, and the manner in which, the State created a false impression that opened the door to rebut the false picture of the complainant in this case. The jury, not the judge, was the trier of fact, and the jury was entitled to hear Appellant's defense.

Because they did not, I must respectfully dissent.

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

MEIER and MCCOY, JJ  join.

PUBLISH

DELIVERED:  October 9, 2014