## POINTER v. TEXAS.

No. 577. Argued March 15, 1965.—Decided April 5, 1965.

*Orville A. Harlan,* by appointment of the Court, 379 U. S. 911, argued the cause and filed a brief for petitioner.

*Gilbert J. Pena,* Assistant Attorney General of Texas, argued the cause for respondent. With him on the brief were *Waggoner Carr,* Attorney General of Texas, *Hawthorne Phillips,* First Assistant Attorney General, *Stanton Stone,* Executive Assistant Attorney General, and *Howard M. Fender* and *Allo B. Crow, Jr.,* Assistant Attorneys General.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Sixth Amendment provides in part that:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the wit-

nesses against him . . . and to have the Assistance of Counsel for his defence."

Two years ago in *Gideon* v. *Wainwright,* 372 U. S. 335, we held that the Fourteenth Amendment makes the Sixth Amendment's guarantee of right to counsel obligatory upon the States. The question we find necessary to decide in this case is whether the Amendment's guarantee of a defendant's right "to be confronted with the witnesses against him," which has been held to include the right to cross-examine those witnesses, is also made applicable to the States by the Fourteenth Amendment.

The petitioner Pointer and one Dillard were arrested in Texas and taken before a state judge for a preliminary hearing (in Texas called the "examining trial") on a charge of having robbed Kenneth W. Phillips of $375 "by assault, or violence, or by putting in fear of life or bodily injury," in violation of Texas Penal Code Art. 1408. At this hearing an Assistant District Attorney conducted the prosecution and examined witnesses, but neither of the defendants, both of whom were laymen, had a lawyer. Phillips as chief witness for the State gave his version of the alleged robbery in detail, identifying petitioner as the man who had robbed him at gunpoint. Apparently Dillard tried to cross-examine Phillips but Pointer did not, although Pointer was said to have tried to cross-examine some other witnesses at the hearing. Petitioner was subsequently indicted on a charge of having committed the robbery. Some time before the trial was held, Phillips moved to California. After putting in evidence to show that Phillips had moved and did not intend to return to Texas, the State at the trial offered the transcript of Phillips' testimony given at the preliminary hearing as evidence against petitioner. Petitioner's counsel immediately objected to introduction of the transcript, stating, "Your Honor, we will object to that, as it is a denial of the confrontment of the witnesses against the Defendant."

Similar objections were repeatedly made by petitioner's counsel but were overruled by the trial judge, apparently in part because, as the judge viewed it, petitioner had been present at the preliminary hearing and therefore had been "accorded the opportunity of cross examining the witnesses there against him." The Texas Court of Criminal Appeals, the highest state court to which the case could be taken, affirmed petitioner's conviction, rejecting his contention that use of the transcript to convict him denied him rights guaranteed by the Sixth and Fourteenth Amendments. 375 S. W. 2d 293. We granted certiorari to consider the important constitutional question the case involves. 379 U. S. 815.

In this Court we do not find it necessary to decide one aspect of the question petitioner raises, that is, whether failure to appoint counsel to represent him at the preliminary hearing unconstitutionally denied him the assistance of counsel within the meaning of *Gideon* v. *Wainwright, supra.* In making that argument petitioner relies mainly on *White* v. *Maryland,* 373 U. S. 59, in which this Court reversed a conviction based in part upon evidence that the defendant had pleaded guilty to the crime at a preliminary hearing where he was without counsel. Since the preliminary hearing there, as in *Hamilton* v. *Alabama,* 368 U. S. 52, was one in which pleas to the charge could be made, we held in *White* as in *Hamilton* that a preliminary proceeding of that nature was so critical a stage in the prosecution that a defendant at that point was entitled to counsel. But the State informs us that at a Texas preliminary hearing, such as is involved here, pleas of guilty or not guilty are not accepted and that the judge decides only whether the accused should be bound over to the grand jury and if so whether he should be admitted to bail. Because of these significant differences in the procedures of the respective States, we cannot say that the *White* case is necessarily controlling

as to the right to counsel. Whether there might be other circumstances making this Texas preliminary hearing so critical to the defendant as to call for appointment of counsel at that stage we need not decide on this record, and that question we reserve. In this case the objections and arguments in the trial court as well as the arguments in the Court of Criminal Appeals and before us make it clear that petitioner's objection is based not so much on the fact that he had no lawyer when Phillips made his statement at the preliminary hearing, as on the fact that use of the transcript of that statement at the trial denied petitioner any opportunity to have the benefit of counsel's cross-examination of the principal witness against him. It is that latter question which we decide here.

I.

The Sixth Amendment is a part of what is called our Bill of Rights. In *Gideon* v. *Wainwright, supra,* in which this Court held that the Sixth Amendment's right to the assistance of counsel is obligatory upon the States, we did so on the ground that "a provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment." 372 U. S., at 342. And last Term in *Malloy* v. *Hogan,* 378 U. S. 1, in holding that the Fifth Amendment's guarantee against self-incrimination was made applicable to the States by the Fourteenth, we reiterated the holding of *Gideon* that the Sixth Amendment's right-to-counsel guarantee is " 'a fundamental right, essential to a fair trial,' " and "thus was made obligatory on the States by the Fourteenth Amendment." 378 U. S., at 6. See also *Murphy* v. *Waterfront Comm'n,* 378 U. S. 52. We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.

It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. See, *e. g.,* 5 Wigmore, Evidence § 1367 (3d ed. 1940). The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution. Moreover, the decisions of this Court and other courts* throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases. This Court in *Kirby* v. *United States,* 174 U. S. 47, 55, 56, referred to the right of confrontation as "[o]ne of the fundamental guarantees of life and liberty," and "a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the Constitution of the United States and in the constitutions of most if not of all the States composing the Union." Mr. Justice Stone, writing for the Court in *Alford* v. *United States,* 282 U. S. 687, 692, declared that the right of cross-examination is "one of the safeguards essential to a fair trial." And in speaking of confrontation and cross-examination this Court said in *Greene* v. *McElroy,* 360 U. S. 474:

"They have ancient roots. They find expression in the Sixth Amendment which provides that in all

*See state and English cases collected in 5 Wigmore, Evidence §§ 1367, 1395 (3d ed. 1940). State constitutional and statutory provisions similar to the Sixth Amendment are collected in 5 Wigmore, *supra,* § 1397, n. 1.

criminal cases the accused shall enjoy the right 'to be confronted with the witnesses against him.' This Court has been zealous to protect these rights from erosion." 360 U. S., at 496–497 (footnote omitted).

There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law. In *In re Oliver,* 333 U. S. 257, this Court said:

"A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." 333 U. S., at 273 (footnote omitted).

And earlier this Term in *Turner* v. *Louisiana,* 379 U. S. 466, 472–473, we held:

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

Compare *Willner* v. *Committee on Character & Fitness,* 373 U. S. 96, 103–104.

We are aware that some cases, particularly *West* v. *Louisiana,* 194 U. S. 258, 264, have stated that the Sixth Amendment's right of confrontation does not apply to trials in state courts, on the ground that the entire Sixth Amendment does not so apply. See also *Stein* v. *New York,* 346 U. S. 156, 195–196. But of course since *Gideon* v. *Wainwright, supra,* it no longer can broadly be said that the Sixth Amendment does not apply to state courts. And as this Court said in *Malloy* v. *Hogan, supra,* "The Court has not hesitated to re-examine past decisions according the Fourteenth Amendment a less central role in the preservation of basic liberties than that which was contemplated by its Framers when they added the Amendment to our constitutional scheme." 378 U. S., at 5. In the light of *Gideon, Malloy,* and other cases cited in those opinions holding various provisions of the Bill of Rights applicable to the States by virtue of the Fourteenth Amendment, the statements made in *West* and similar cases generally declaring that the Sixth Amendment does not apply to the States can no longer be regarded as the law. We hold that petitioner was entitled to be tried in accordance with the protection of the confrontation guarantee of the Sixth Amendment, and that that guarantee, like the right against compelled self-incrimination, is "to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." *Malloy* v. *Hogan, supra,* 378 U. S., at 10.

## II.

Under this Court's prior decisions, the Sixth Amendment's guarantee of confrontation and cross-examination was unquestionably denied petitioner in this case. As has been pointed out, a major reason underlying the

constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. See, *e. g., Dowdell* v. *United States,* 221 U. S. 325, 330; *Motes* v. *United States,* 178 U. S. 458, 474; *Kirby* v. *United States,* 174 U. S. 47, 55–56; *Mattox* v. *United States,* 156 U. S. 237, 242–243. Cf. *Hopt* v. *Utah,* 110 U. S. 574, 581; *Queen* v. *Hepburn,* 7 Cranch 290, 295. This Court has recognized the admissibility against an accused of dying declarations, *Mattox* v. *United States,* 146 U. S. 140, 151, and of testimony of a deceased witness who has testified at a former trial, *Mattox* v. *United States,* 156 U. S. 237, 240–244. See also *Dowdell* v. *United States, supra,* 221 U. S., at 330; *Kirby* v. *United States, supra,* 174 U. S., at 61. Nothing we hold here is to the contrary. The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. Compare *Motes* v. *United States, supra,* 178 U. S., at 474. There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. The case before us, however, does not present any situation like those mentioned above or others analogous to them. Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips, its introduction in a federal court in a criminal case against Pointer would have amounted to denial of the privilege of confrontation guaranteed by the Sixth Amendment. Since we hold that the right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceed-

ing, it follows that use of the transcript to convict petitioner denied him a constitutional right, and that his conviction must be reversed.

*Reversed and remanded.*

MR. JUSTICE HARLAN, concurring in the result.

I agree that in the circumstances the admission of the statement in question deprived the petitioner of a right of "confrontation" assured by the Fourteenth Amendment. I cannot subscribe, however, to the constitutional reasoning of the Court.

The Court holds that the right of confrontation guaranteed by the Sixth Amendment in federal criminal trials is carried into state criminal cases by the Fourteenth Amendment. This is another step in the onward march of the long-since discredited "incorporation" doctrine (see, *e. g.,* Fairman, Does the Fourteenth Amendment Incorporate the Bill of Rights? The Original Understanding, 2 Stan. L. Rev. 5 (1949); Frankfurter, Memorandum on "Incorporation" of the Bill of Rights Into the Due Process Clause of the Fourteenth Amendment, 78 Harv. L. Rev. 746 (1965)), which for some reason that I have not yet been able to fathom has come into the sunlight in recent years. See, *e. g., Mapp* v. *Ohio,* 367 U. S. 643; *Ker* v. *California,* 374 U. S. 23; *Malloy* v. *Hogan,* 378 U. S. 1.

For me this state judgment must be reversed because a right of confrontation is "implicit in the concept of ordered liberty," *Palko* v. *Connecticut,* 302 U. S. 319, 325, reflected in the Due Process Clause of the Fourteenth Amendment independently of the Sixth.

While either of these constitutional approaches brings one to the same end result in this particular case, there is a basic difference between the two in the kind of future constitutional development they portend. The concept of Fourteenth Amendment due process embodied in *Palko*

and a host of other thoughtful past decisions now rapidly falling into discard, recognizes that our Constitution tolerates, indeed encourages, differences between the methods used to effectuate legitimate federal and state concerns, subject to the requirements of fundamental fairness "implicit in the concept of ordered liberty." The philosophy of "incorporation," on the other hand, subordinates all such state differences to the particular requirements of the Federal Bill of Rights (but see *Ker* v. *California, supra,* at 34) and increasingly subjects state legal processes to enveloping federal judicial authority. "Selective" incorporation or "absorption" amounts to little more than a diluted form of the full incorporation theory. Whereas it rejects full incorporation because of recognition that not all of the guarantees of the Bill of Rights should be deemed "fundamental," it at the same time ignores the possibility that not all phases of any given guaranty described in the Bill of Rights are necessarily fundamental.

It is too often forgotten in these times that the American federal system is itself constitutionally ordained, that it embodies values profoundly making for lasting liberties in this country, and that its legitimate requirements demand continuing solid recognition in all phases of the work of this Court. The "incorporation" doctrines, whether full blown or selective, are both historically and constitutionally unsound and incompatible with the maintenance of our federal system on even course.

Mr. Justice Stewart, concurring in the result.

I join in the judgment reversing this conviction, for the reason that the petitioner was denied the opportunity to cross-examine, through counsel, the chief witness for the prosecution. But I do not join in the Court's pronouncement which makes "the Sixth Amendment's right of an accused to confront the witnesses against him . . . oblig-

atory on the States." That questionable *tour de force* seems to me entirely unnecessary to the decision of this case, which I think is directly controlled by the Fourteenth Amendment's guarantee that no State shall "deprive any person of life, liberty, or property, without due process of law."

The right of defense counsel in a criminal case to cross-examine the prosecutor's living witnesses is "[o]ne of the fundamental guarantees of life and liberty,"[1] and "one of the safeguards essential to a fair trial."[2] It is, I think, as indispensable an ingredient as the "right to be tried in a courtroom presided over by a judge."[3] Indeed, this Court has said so this very Term. *Turner* v. *Louisiana*, 379 U. S. 466, 472–473.[4]

Here that right was completely denied. Therefore, as the Court correctly points out, we need not consider the case which could be presented if Phillips' statement had been taken at a hearing at which the petitioner's counsel was given a full opportunity to cross-examine. See *West* v. *Louisiana*, 194 U. S. 258.

Mr. Justice Goldberg, concurring.

I agree with the holding of the Court that "the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Ante*, at 403. I therefore join in the opinion and judgment of the Court. My Brother Harlan, while agreeing with the result reached by the Court, deplores the Court's

---

[1] *Kirby* v. *United States*, 174 U. S. 47, 55.

[2] *Alford* v. *United States*, 282 U. S. 687, 692.

[3] *Rideau* v. *Louisiana*, 373 U. S. 723, 727.

[4] See also *In re Murchison*, 349 U. S. 133, where the Court said that "due process requires as a minimum that an accused be given a public trial after reasonable notice of the charges, have a right to examine witnesses against him, call witnesses on his own behalf, and be represented by counsel." 349 U. S., at 134.

reasoning as "another step in the onward march of the long-since discredited 'incorporation' doctrine," *ante,* at 408. Since I was not on the Court when the incorporation issue was joined, see *Adamson* v. *California,* 332 U. S. 46, I deem it appropriate to set forth briefly my view on this subject.

I need not recapitulate the arguments for or against incorporation whether "total" or "selective." They have been set forth adequately elsewhere.[1] My Brother BLACK's view of incorporation has never commanded a majority of the Court, though in *Adamson* it was assented to by four Justices. The Court in its decisions has followed a course whereby certain guarantees "have been taken over from the earlier articles of the federal bill of rights and brought within the Fourteenth Amendment," *Palko* v. *Connecticut,* 302 U. S. 319, 326, by a process which might aptly be described as "a process of absorption." *Ibid.* See *Cohen* v. *Hurley,* 366 U. S. 117, 154 (dissenting opinion of MR. JUSTICE BRENNAN); Brennan, The Bill of Rights and the States, 36 N. Y. U. L. Rev. 761 (1961). Thus the Court has held that the Fourteenth

---

[1] See *Adamson* v. *California, supra,* at 59 (concurring opinion of Mr. Justice Frankfurter); *id.,* at 68 (dissenting opinion of MR. JUSTICE BLACK); *Malloy* v. *Hogan,* 378 U. S. 1; *id.,* at 14 (dissenting opinion of MR. JUSTICE HARLAN); *Gideon* v. *Wainwright,* 372 U. S. 335, 345 (concurring opinion of MR. JUSTICE DOUGLAS); *id.,* at 349 (concurring opinion of MR. JUSTICE HARLAN); *Poe* v. *Ullman,* 367 U. S. 497, 509 (dissenting opinion of MR. JUSTICE DOUGLAS); Frankfurter, Memorandum on "Incorporation" of the Bill of Rights Into the Due Process Clause of the Fourteenth Amendment, 78 Harv. L. Rev. 746; Black, The Bill of Rights, 35 N. Y. U. L. Rev. 865 (1960); Brennan, The Bill of Rights and the States, 36 N. Y. U. L. Rev. 761 (1961); Fairman, Does the Fourteenth Amendment Incorporate the Bill of Rights? The Original Understanding, 2 Stan. L. Rev. 5 (1949); Green, The Bill of Rights, the Fourteenth Amendment and the Supreme Court, 46 Mich. L. Rev. 869 (1948); Henkin, "Selective Incorporation" in the Fourteenth Amendment, 73 Yale L. J. 74 (1963).

Amendment guarantees against infringement by the States the liberties of the First Amendment,[2] the Fourth Amendment,[3] the Just Compensation Clause of the Fifth Amendment,[4] the Fifth Amendment's privilege against self-incrimination,[5] the Eighth Amendment's prohibition of cruel and unusual punishments,[6] and the Sixth Amendment's guarantee of the assistance of counsel for an accused in a criminal prosecution.[7]

With all deference to my Brother HARLAN, I cannot agree that this process has "come into the sunlight in recent years." *Ante*, at 408. Rather, I believe that it has its origins at least as far back as *Twining* v. *New Jersey*, 211 U. S. 78, 99, where the Court stated that "it is possible that some of the personal rights safeguarded by the first eight Amendments against National action may also be safeguarded against state action, because a denial of them would be a denial of due process of law. *Chicago, Burlington & Quincy Railroad* v. *Chicago*, 166 U. S. 226." This passage and the authority cited make clear that what is protected by the Fourteenth Amendment are "rights," which apply in every case, not solely in those cases where it seems "fair" to a majority of the Court to afford the protection. Later cases reaffirm that the process of "absorption" is one of extending "rights." See *Ker* v. *California*, 374 U. S. 23; *Malloy* v. *Hogan*, 378 U. S. 1, and cases cited by MR. JUSTICE BRENNAN in his dissenting opinion in *Cohen* v. *Hurley, supra,* at 156. I agree with these decisions, as is apparent from my votes in

---

[2] See, *e. g., Gitlow* v. *New York*, 268 U. S. 652, 666; *De Jonge* v. *Oregon*, 299 U. S. 353, 364; *Cantwell* v. *Connecticut*, 310 U. S. 296, 303; *Louisiana ex rel. Gremillion* v. *NAACP*, 366 U. S. 293, 296; *New York Times Co.* v. *Sullivan*, 376 U. S. 254.

[3] See *Wolf* v. *Colorado*, 338 U. S. 25; *Mapp* v. *Ohio*, 367 U. S. 643.

[4] *Chicago, B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226.

[5] *Malloy* v. *Hogan*, 378 U. S. 1.

[6] *Robinson* v. *California*, 370 U. S. 660.

[7] *Gideon* v. *Wainwright*, 372 U. S. 335.

*Gideon* v. *Wainwright,* 372 U. S. 335; *Malloy* v. *Hogan,* *supra,* and *Murphy* v. *Waterfront Comm'n,* 378 U. S. 52, and my concurring opinion in *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 297, and I subscribe to the process by which fundamental guarantees of the Bill of Rights are absorbed by the Fourteenth Amendment and thereby applied to the States.

Furthermore, I do not agree with my Brother HARLAN that once a provision of the Bill of Rights has been held applicable to the States by the Fourteenth Amendment, it does not apply to the States in full strength. Such a view would have the Fourteenth Amendment apply to the States "only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights.' " *Malloy* v. *Hogan, supra,* at 10–11. It would allow the States greater latitude than the Federal Government to abridge concededly fundamental liberties protected by the Constitution. While I quite agree with Mr. Justice Brandeis that "[i]t is one of the happy incidents of the federal system that a . . . State may . . . serve as a laboratory; and try novel social and economic experiments," *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 280, 311 (dissenting opinion), I do not believe that this includes the power to experiment with the fundamental liberties of citizens safeguarded by the Bill of Rights. My Brother HARLAN's view would also require this Court to make the extremely subjective and excessively discretionary determination as to whether a practice, forbidden the Federal Government by a fundamental constitutional guarantee, is, as viewed in the factual circumstances surrounding each individual case, sufficiently repugnant to the notion of due process as to be forbidden the States.

Finally, I do not see that my Brother HARLAN's view would further any legitimate interests of federalism. It would require this Court to intervene in the state judicial process with considerable lack of predictability and with

414

a consequent likelihood of considerable friction. This is well illustrated by the difficulties which were faced and were articulated by the state courts attempting to apply this Court's now discarded rule of *Betts* v. *Brady,* 316 U. S. 455. See Green, The Bill of Rights, the Fourteenth Amendment and the Supreme Court, 46 Mich. L. Rev. 869, 897–898. These difficulties led the Attorneys General of 22 States to urge that this Court overrule *Betts* v. *Brady* and apply fully the Sixth Amendment's guarantee of right to counsel to the States through the Fourteenth Amendment. See *Gideon* v. *Wainwright, supra,* at 336. And, to deny to the States the power to impair a fundamental constitutional right is not to increase federal power, but, rather, to limit the power of both federal and state governments in favor of safeguarding the fundamental rights and liberties of the individual. In my view this promotes rather than undermines the basic policy of avoiding excess concentration of power in government, federal or state, which underlies our concepts of federalism.

I adhere to and support the process of absorption by means of which the Court holds that certain fundamental guarantees of the Bill of Rights are made obligatory on the States through the Fourteenth Amendment. Although, as this case illustrates, there are differences among members of the Court as to the theory by which the Fourteenth Amendment protects the fundamental liberties of individual citizens, it is noteworthy that there is a large area of agreement, both here and in other cases, that certain basic rights are fundamental—not to be denied the individual by either the state or federal governments under the Constitution. See, *e. g., Cantwell* v. *Connecticut,* 310 U. S. 296; *NAACP* v. *Alabama ex rel. Patterson,* 357 U. S. 449; *Gideon* v. *Wainwright, supra; New York Times Co.* v. *Sullivan, supra; Turner* v. *Louisiana,* 379 U. S. 466.