IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31639-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENISE L. JONES, | ) | UNPUPLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Denise Jones appeals her possession of methamphetamine conviction, arguing the trial court violated her constitutional right to confront witnesses against her when it permitted an expert witness to testify about the results of a drug test he did not conduct. We believe *State v. Lui*, 179 Wn.2d 457, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014) controls and hold that Jones' constitutional rights were not violated. An expert may rely on technical data prepared by others so long as the expert reached his own conclusion, as he did here.

FACTS

On July 19, 2011, law enforcement went to Denise Jones' residence to conduct a welfare check. When they arrived, they knocked on the door and, after a few seconds, Jones answered. Jones opened the door, stepped outside, and shut the door behind her. Despite the closed door, Deputy Sheriff Mark Smoldt smelled burnt marijuana wafting

from Jones' residence. Deputy Smoldt confronted Jones about the smell and asked if she had marijuana in the residence. Jones admitted to the presence of marijuana but added that she possessed a medical marijuana license authorizing her use. She asked Smoldt if he would like to see the authorization. Smoldt accepted her offer.

Denise Jones returned inside her home and shut the front door. She returned with a gallon sized zip-lock bag, in which lay several folded documents, and she reopened the door. As she pulled out the documents in search for her marijuana license, two small zip-lock bags fell to the ground. Deputy Mark Smoldt retrieved the bags and espied a substance inside the bags that appeared to be methamphetamine. Jones blurted, "[t]hose aren't mine." Report of Proceedings (RP) at 52. Smoldt seized the bags and their substances.

Deputy Mark Smoldt forwarded the seized substances to Washington State Patrol (WSP) Forensic Scientist Jason Stenzel, who tested the substances using a microcrystalline reagent and Fourier Transform Infrared Spectroscopy (FTIR). The reagent, depending on the substance tested, creates a crystalline structure. Under the microscope, Stenzel compared the colors and shapes of the crystals to those produced by the reagent when combined with a known sample of methamphetamine. The FTIR bombarded the substance Smoldt seized with different wavelengths of infrared light. Based on the movement of those molecules when hit with light, the FTIR machine produced a graph. Stenzel analyzed the color and shape of the crystals and the graph the

FTIR machine produced to conclude the substances were methamphetamine hydrochloride.

## PROCEDURE

On September 8, 2011, the State charged Denise Jones with possessing methamphetamine. Denise Jones' initial trial date was December 12, 2011. Because of repeated continuances, trial did not begin until April 8, 2013. In the interim, Forensic Scientist Jason Stenzel moved to South Dakota. In lieu of Stenzel's testimony, the State called forensic scientist and peer reviewer Trevor Allen to testify. Jones objected to Allen's testimony because he did not conduct the test. Allen, however, peer reviewed Stenzel's work, reviewed the data from the microcrystalline test and FTIR machine and, based on the raw data, formed an independent opinion. Based on Allen's independent assessment, the trial court admitted Allen's testimony.

During his trial testimony, Trevor Allen admitted he did not perform the original tests. He also testified he was qualified as an expert and was the technical peer reviewer who examined the analytical data, the notes, and the reports from the original tester. Allen described the tests conducted on the substances and testified that he examined the data that resulted from those tests. Based on the data, Allen testified that he formed an independent opinion about the identity of the tested material. Allen opined that the substances were methamphetamine.

3

A jury convicted Denise Jones of possession of a controlled substance, methamphetamine.

## LAW AND ANALYSIS

Denise Jones contends the trial court violated her constitutional right to confront witnesses against her when it permitted an expert witness to testify about the results of a drug test conducted by another. But as Jones admits, our Supreme Court reached the opposite conclusion in *State v. Lui*, 179 Wn.2d 457, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014). Following *Lui*, this court must affirm her conviction.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront witnesses against him or her. U.S. CONST. amend. VI. The Fourteenth Amendment renders the confrontation clause binding on the states. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). Washington's Constitution also grants an accused, in a criminal prosecution, "the right to meet the witnesses against him face to face." CONST. art. 1, § 22. Washington protections are coextensive with their federal counterpart. *Lui*, 179 Wn.2d at 468-69.

Since 2004, when the Supreme Court decided *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the case law defining Sixth Amendment protections has become increasingly fragmented. In three successive opinions, the Supreme Court examined the confrontation clause status of laboratory analysis reports. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314

4

(2009); *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610

(2011); and *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012).

Denise Jones attempts to reconstruct these cases when arguing that WSP Forensic

Scientist Trevor Allen's testimony violated her confrontation rights.

In a lengthy opinion tracing the Supreme Court's jurisprudence on the issue, our

state high court rejected Denise Jones' argument. Since Jones relies on the same

arguments, the *Lui* court's analysis bears repeating.

> In *Melendez-Diaz*, Justices Scalia, Stevens, Souter, and Ginsburg, joined by Justice Thomas, held that three certificates identifying bags of powder as "cocaine" were testimonial, as the certificates were functionally equivalent to affidavits and were created for the primary purpose of providing evidence for trial.
>
> . . . .
>
> Justice Thomas wrote separately to reaffirm that his support for the majority was conditioned on the formal nature of the affidavits at issue.
>
> In *Bullcoming*, the state introduced a certificate recording the defendant's blood alcohol level at 0.21 grams per hundred milliliters through a co-worker of the laboratory analyst who had not observed or reviewed the actual testing. Again, the Court declared the evidence inadmissible by similar divisions as in *Melendez-Diaz* . . . noting that the certificate had an "evidentiary purpose," that it was created "in aid of a police investigation," and that it was formalized. Therefore, the certificate was testimonial, which left the Court to determine whether the State had satisfied its confrontation clause burden. It had not; the witness had not participated in the test and could not speak to the procedures used or observations made.
>
> . . . .
>
> [I]n the next case, *Williams*, Justice Thomas joined the four-judge plurality of Chief Justice Roberts and Justices Kennedy, Breyer, and Alito to find no confrontation clause violation. The issue was whether "*Crawford* bar[red] an expert from expressing an opinion based on facts about a case that have been made known to the expert but about which the

5

expert is not competent to testify." In *Williams*, an expert testified that a DNA profile taken from a rape victim matched a DNA profile recovered from the defendant. The expert did not prepare the DNA profile; rather, she relied on a DNA profile prepared by an outside laboratory. No one from that laboratory was subject to cross-examination. Justice Alito wrote for the four-judge plurality, including Chief Justice Roberts and Justices Kennedy, and Breyer, offering "two independent reasons" for finding no violation of the confrontation clause. First, the expert's reliance on the previous steps in the DNA analysis was not offered to prove the truth of the matter asserted. As a "second, independent basis" for the decision, Justice Alito pointed out that the DNA profile was produced before the defendant was identified as a suspect and "the profile that Cellmark provided was not inherently inculpatory."

. . . .

As in *Melendez-Diaz* and *Bullcoming*, Justice Thomas provided the decisive fifth vote, but in *Williams* he concluded that the DNA lab reports lacked sufficient formality or solemnity to be considered testimonial. And none of these three cases provide a single clear rule because Justice Thomas provided the fifth critical vote in all three cases based on his individual theory that evidence is testimonial only if it bears indicia of formality and solemnity.

. . . .

In addition to there being no clear reasoning for expert witnesses, no ruling of the Court is directly on point here. In three important ways, this case brings us into uncharted constitutional territory. First, *Melendez-Diaz* did not reach back to encompass every factual predicate behind an expert witness's findings. . . . Second, *Bullcoming* expressly did not reach the confrontation clause status of raw data generated by an automated process without human input. Rather, the subject matter of the confrontation clause concerns those "past events and human actions *not revealed in* raw, machine-produced data. . . . "Finally, *Williams* did not address how the confrontation clause applies to the "panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians." The same question *Williams* did not reach—the confrontation clause status of forensic reports, expert witnesses, and the technical data underlying their conclusions—is now squarely before us.

*Lui*, 179 at 474-79 (internal citations omitted).

In the absence of any authority on point, our state Supreme Court, in *Lui*, crafted its own rule based on the plain language of the confrontation clause. The confrontation right applies only to "the witnesses against [the defendant]." U.S. CONST. amend. VI. *Crawford* tells us that a "witness" is a person who "bear[s] testimony" and that "testimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U.S. at 51 (internal quotation marks omitted). If the witness's statements help to identify or inculpate the defendant, then the witness is a "witness against" the defendant. *Lui*, 179 Wn.2d at 482. Accordingly, the right to confront witnesses attaches "[i]f the declarant makes a factual statement to the tribunal, . . . [and] the witness's statements help to identify or inculpate the defendant." *Lui*, 179 Wn.2d at 482. This "test allows expert witnesses to rely upon technical data prepared by others when reaching their own conclusions, without requiring each laboratory technician to take the witness stand." *Lui*, 179 Wn.2d at 483.

Applying its new test to expert testimony comparing DNA (deoxyribonucleic acid) profiles the expert did not create, the court concluded Lui's confrontation right was not violated. *Lui*, 179 Wn.2d at 492-93. The court reasoned that DNA profiles gained their inculpatory character only once the expert compared them. Before then, "it appears as a whole bunch of numbers that kind of look like gobbledygook." *Lui*, 179 Wn.2d at 488. Therefore, "the only 'witness against' the defendant in the course of the DNA testing process is the final analyst who examines the machine-generated data . . . and makes a

determination that the defendant's profile matches some other profile." *Lui*, 179 Wn.2d at 489.

Here, unlike *Mellendez-Diaz*, the State did not admit a certificate attesting to the controlled nature of the substances. 557 U.S. at 310-11. Unlike *Bullcoming*, the State did not admit a certificate through a surrogate analyst who "had not participated in the test and could not speak to the procedures used or observations made." *Lui*, 179 Wn.2d at 476; *Bullcoming*, 131 S. Ct. at 2710-12. Unlike *Williams*, the State's expert was competent to identify the controlled substances as methamphetamine. 132 S. Ct. at 2227.

The testing process Jason Stetzer employed created different size and color crystals and a graph based on the movement of molecules hit with different infrared light. Like the DNA profiles at issue in *Lui*, the raw data Trevor Allen analyzed looked like "gobbledygook." 179 Wn.2d at 488. Allen examined this data and independently came to his own opinion about the identity of the substance. The *Lui* "test allows expert witnesses to rely upon technical data prepared by others when reaching their own conclusions." 179 Wn.2d at 483. Like the DNA profiles at issue in *Lui*, the raw data Allen used did not gain its inculpatory character until analyzed. Denise Jones was able to confront and cross-examine Allen face-to-face.

## CONCLUSIONS

The State did not violate Denise Jones' confrontation clause rights. We affirm her conviction.

No. 31639-4-III
*State v. Jones*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.