**Opinion issued June 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00075-CR

————————————

## GERSAIN ARIAS MOLINA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 185th District Court
Harris County, Texas
Trial Court Case No. 1502279

## MEMORANDUM OPINION

Appellant Gersain Arias Molina appeals his conviction for continuous sexual abuse of a child. Molina argues that he is entitled to a new trial because (1) allowing the minor complainant's therapist to testify by Skype violated his Confrontation Clause rights; (2) allowing the minor complainant to testify via closed-circuit

television also violated his Confrontation Clause rights; and (3) allowing the minor complainant to testify via closed-circuit television deprived him of the presumption of innocence. We address these arguments in turn and affirm.

## Background

Molina was charged with continuous sexual abuse of Jane[1], a child under the age of 14. At trial, Jane's mother Dana testified that, in January 2016, Jane, then seven years old, lived with Molina and her. According to Dana, Molina was a father figure to Jane. Molina and Dana shared joint conservatorship of Jane, and Jane referred to Molina as "Daddy."

Dana testified that one day in January 2016, she left Jane at home with Molina while she went to buy a wedding gift. When Dana returned home, the lights were off in the house and it was unusually quiet. Dana went into her bedroom and saw Molina jumping into bed and under the covers. She asked him where Jane was and he did not answer. She asked him again and he pointed to the bedroom closet. Dana found Jane standing in the dark closet without underwear.[2] Dana took Jane in the other room and asked her what happened. According to Dana, Jane got nervous and fidgety and kept asking if she was in trouble. Eventually, Jane told Dana: "Daddy put his ta-

---

[1]     To protect the complainant's identity, we refer to her using the pseudonym "Jane."

[2]     At trial, the State introduced Jane's underwear into evidence and presented expert testimony that Molina's DNA could not be excluded from the DNA found on it.

2

ta in my ta-ta." Dana testified that "ta-ta" meant "private area" or "vagina." Dana checked Jane and noticed stray pubic hairs and blood in Jane's private area. Dana took Jane to her mother's house and then to the hospital. Dana also met with police officers and reported Molina.

During trial, the State filed a motion requesting that Jane be permitted to testify via closed-circuit television. The State argued that Jane "need[ed] the protection of closed circuit television" because she was eight years old, she was "emotionally distraught because of abuse perpetrated by the Defendant," she feared " having to confront the defendant in person," it would be "traumatic and very difficult for the child to testify in front of the Defendant," and it would create "enormous stress" and be "damaging to [her] emotional stability and cause significant psychological harm."

The trial court heard the motion outside of the jury's presence. The court permitted the State to present testimony on this motion from Sarah Wilson, Jane's therapist, via Skype because she was in Oregon, was in her seventh month of pregnancy, and could not travel "due to pregnancy issues." Molina's counsel objected to the presentation of Wilson's testimony by Skype, but the trial court overruled the objection, noting that Wilson was subject to cross-examination.

Wilson testified regarding her professional and educational background and the nature of her interactions with Jane. She stated that she had been treating Jane

once a week for approximately one year for trauma related to the reported sexual abuse, and Wilson had diagnosed Jane with posttraumatic stress disorder. Wilson opined that it was "highly likely that [Jane] would experience setbacks and regression in her mental health and treatment and her symptoms" if she testified in front of Molina. In Wilson's professional opinion, permitting Jane to testify through closed-circuit procedures "would be necessary to protect her from the risk of retraumatization."

The State also called Dana to testify in support of its motion. Dana testified that when she spoke with Jane about the possibility of seeing her father (Molina) at trial, Jane had a panic attack, cried, and repeated that she did not "want to see Daddy." Dana testified that Jane was potty-trained but, while preparing for trial, Jane began urinating in her bed. Jane also had trouble sleeping and frequently had nightmares about Molina. Dana had seen Jane shaking, wringing her hands, and crying. Dana believed Jane would be traumatized if she had to see Molina—and that Jane would suffer "extremely great" emotional distress.

The trial court granted the State's motion to permit Jane to testify by closed-circuit television and made the following findings:

- "[T]he closed-circuit procedure is necessary to protect the welfare of this particular child."

- The child is 8 years old, "very young," and "has been in therapy for quite some time."

4

- The child has been able to speak not only with the therapist but also with Dana regarding the events that occurred in January 2016 and "any time there's a discussion of seeing the defendant or the defendant being present or coming to court to see the defendant, it appears the child has some very serious reaction to that."

- "[I]t does not appear . . . that the child was upset by coming into the courtroom, . . . but rather that . . . the emotional distress is the child having to see the defendant or having contact with the defendant."

The State presented Jane's testimony by closed-circuit television. The trial judge, the State's counsel, and Molina's counsel were present with Jane when she testified. Jane took her oath and was subject to cross-examination by Molina's counsel. Following Jane's testimony, Molina's counsel confirmed on the record that he met with Molina to determine whether to ask additional questions, and they were "in agreement there were no further questions that needed to be asked."

Ultimately, the jury convicted Molina of continuous sexual abuse of a child and sentenced him to 45 years' confinement. Molina appeals.

**Discussion**

In three issues, Molina argues that the judgment should be vacated and he should be entitled to a new trial because (1) permitting Wilson to testify by Skype violated his Confrontation Clause rights; (2) permitting Jane to testify via closed-circuit television violated his Confrontation Clause rights; and (3) allowing Jane to testify via closed-circuit television deprived him of the presumption of innocence. We disagree with Molina's points of error and affirm.

5

## A. Did permitting Wilson to testify over Skype violate Molina's Confrontation Clause rights?

Molina argues that allowing Wilson to testify via Skype—at a pretrial hearing in which the jury was not present—deprived him of his constitutional Confrontation Clause rights. Assuming that these rights applied in the pretrial setting at issue, we find no Constitutional violation.

Both the Texas and United States Constitutions guarantee a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI; *see* TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused . . . shall be confronted by the witnesses against him[.]"); *see also Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965).

Although the Sixth Amendment to the United States Constitution reflects a preference for face-to-face confrontation, the United States Supreme Court has explained that face-to-face confrontation "is not the *sine qua non* of the confrontation right." *Maryland v. Craig*, 497 U.S. 836, 847, 110 S. Ct. 3157, 3164 (1990) ("[W]e have never insisted on an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant."); *see Walker v. State*, 461 S.W.3d 599, 605 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Craig*, 497 U.S. at 849, 110 S. Ct. at 3165). The Texas Court of Criminal Appeals has likewise "not read the right to confrontation guaranteed under our State Constitution as affording appellant the right to face-to-face confrontation" in all circumstances.

6

*Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991) ("[W]e will use the same analysis applied in *Craig* to determine if the State Constitution has been violated[.]").

The "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig,* 497 U.S. at 845, 110 S. Ct. at 3163. Thus, when addressing a potential exception to face-to-face confrontation, we examine "whether the method of electronic testimony used by the State preserves the 'salutary effects of face-to-face confrontation' relevant to a Sixth Amendment analysis." *Montague v. State*, No. 03-14-00266-CR, 2016 WL 112378, at *5 (Tex. App.—Austin, Jan. 6, 2016, pet. ref'd) (mem. op., not designated for publication) (quoting *Stevens v. State*, 234 S.W.3d 748, 782 (Tex. App.—Fort Worth 2007, no pet.)). These salutary effects include: (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact-finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence. *Id.* The presence of these "other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor"—can ensure that testimony is "both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig,* 497 U.S. at 851, 110 S. Ct. at 3166; *see also*

7

*Gonzales*, 818 S.W.2d at 764 (emphasizing that witness "testified under oath, was subject to extensive cross-examination, and was observed by the judge, the jury and appellant").

Applying these principles, Texas courts have at times allowed pregnant witnesses to testify electronically when health risks associated with the pregnancy limited the witness's ability to travel and the other characteristics of in-court testimony were preserved. *See Montague*, 2016 WL 112378, at *5 (electronic testimony of pregnant witness did not violate defendant's right to confrontation); *Acevedo v. State*, No. 05-08-00839-CR, 2009 WL 3353625, at *8 (Tex. App.—Dallas Oct. 20, 2009, pet. ref'd) (not designated for publication) (trial court did not err in permitting pregnant witness to testify via two-way video conferencing system where all other characteristics of in-court testimony were preserved).[3]

That is what we face here. Assuming for these purposes that the Sixth Amendment of the U.S. Constitution and Article I, section 10 of the Texas

---

[3] Texas courts have applied the same reasoning in other circumstances. *See Rivera v. State*, 381 S.W.3d 710, 713 (Tex. App.—Beaumont 2012, pet. ref'd) ("We conclude that under the circumstances, the preference for having witnesses testify in the courtroom must give way to the practical considerations involving Taylor's military obligation that made his physical presence impractical."); *Paul v. State*, 419 S.W.3d 446, 459 (Tex. App.—Tyler 2012, pet. ref'd) ("Jordan's serious health situation was an exceptional circumstance that warranted permitting her testimony by a computer video conferencing system."); *Stevens v. State*, 234 S.W.3d 748, 782 (Tex. App.—Fort Worth 2007, no pet.) ("Ward's tenuous health situation—documented by letters from his treating cardiologist—was an exceptional circumstance that warranted permitting his testimony by two-way closed circuit television.").

Constitution apply to this pretrial hearing, Wilson's testimony did not violate Molina's confrontation rights. As in *Acevedo* and *Montague*, this case involves a pregnant witness who asserted an inability to testify live due to her pregnancy. The State here explained that Wilson "was not allowed to fly" due to "pregnancy issues." And Wilson herself testified that she was in her seventh month of pregnancy and did not fly "due to health reasons." "While we do not consider lightly the circumstances warranting an exception to face-to-face confrontation, we consider the health of a mother and her unborn baby no less important than a terminal illness or infirmity in an elderly person." *Acevedo*, 2009 WL 3353625, at *8.

Wilson's testimony preserved the salutary effects of face-to-face confrontation. It is undisputed that Wilson was sworn in and testified under oath. It is also undisputed that Wilson was subject to cross-examination, and Molina was present while Wilson testified. The record also reflects that counsel for Molina and the State were present in the courtroom when Wilson testified, Wilson could hear counsel, and her testimony was audible in the courtroom.[4] Moreover, Wilson's testimony did not go to the trier of fact; it was instead offered to the court outside of the presence of the jury as evidence concerning Jane's need to testify remotely. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S. Ct. 989, 999 (1987) (The "right to

---

[4]     Molina did not object below on the grounds that he or the trial court could not adequately see or hear her.

confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."). Wilson's testimony presents no Constitutional violation. *See Montague*, 2016 WL 112378, at *5; *Acevedo*, 2009 WL 3353625, at *8; *see also Craig*, 497 U.S. at 845, 110 S. Ct. at 3163.

We overrule Molina's first issue.

## B. Did permitting Jane to testify by closed-circuit television violate Molina's Confrontation Clause rights?

In his second issue, Molina argues that the trial court abused its discretion by allowing Jane to testify by closed-circuit television. He argues that the admissible evidence was insufficient to establish that Jane would suffer more than "*de minimis*" emotional distress if she testified live. Thus, he contends, Jane's testimony violated his confrontation rights. We again disagree.

### 1. Standard of Review

It is settled that "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Craig,* 497 U.S. at 855, 110 S. Ct. at 3169; *Marx v. State*, 987 S.W.2d 577, 580 (Tex. Crim. App. 1999). The Texas Code of Criminal Procedure codifies this principle: "On its own motion or on the motion

10

of the attorney representing the state or the attorney representing the defendant, the court may order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact." TEX. CODE CRIM. PROC. art. 38.071, § 3(a).

The Supreme Court has explained that this special testimonial procedure (testifying by closed-circuit equipment) may be used in a child abuse case when necessary to prevent significant emotional trauma to the child witness caused by the defendant's presence. *Craig,* 497 U.S. at 855–56, 110 S. Ct. at 3169; *Marx*, 987 S.W.2d at 580. A trial court may admit closed-circuit television testimony of a child if it determines that:

> (1) the use of the procedure is necessary to protect the welfare of the child witness;
>
> (2) the child witness would be traumatized by the presence of the defendant; and
>
> (3) the trauma would be "more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.'"

*Craig,* 497 U.S. at 855–56, 110 S. Ct. at 3169 (quoting *Wildermuth v. State,* 310 Md. 496, 524, 530 A.2d 275, 289 (1987)); *see Gonzales*, 818 S.W.2d at 762 (*Craig*'s analysis applies under the Texas Constitution).

As discussed above, the *Craig* Court concluded that the reliability of the child witness's testimony may be assured absent a face-to-face encounter through the

11

combined effect of the witness's testimony under oath, the witness being subject to cross-examination, and the factfinder's ability to observe the witness's demeanor on the video monitor. *Craig,* 497 U.S. at 849–51, 110 S. Ct. at 3165–66; *Marx*, 987 S.W.2d at 580.

## 2. Analysis

Molina argues that the trial court abused its discretion by allowing Jane to testify by closed-circuit television because Wilson's testimony violated Molina's Confrontation Clause rights and the remaining testimony was legally insufficient to justify depriving Molina of face-to-face confrontation. Following binding, well-settled law, we disagree.

As a threshold matter, we reject Molina's first argument because we have already concluded that Wilson's testimony did not violate Molina's confrontation rights. *See supra* Section A.

The evidence justified the use of closed-circuit television. Dana (Jane's mother) testified both that Jane would be traumatized if she had to see Molina and that Jane would suffer "extremely great" emotional distress. Dana averred that when she spoke with Jane about possibly seeing Molina at trial, Jane had a panic attack. Dana also testified that, leading up to trial, Jane had trouble sleeping, had nightmares about Molina, seemed scared, and urinated in her bed.

Wilson testified that it was "highly likely that [Jane] would experience setbacks and regression in her mental health and treatment and her symptoms" if she testified in front of Molina. In Wilson's professional opinion, permitting Jane to testify through closed-circuit procedures "would be necessary to protect her from the risk of retraumatization."

This evidence supports the trial court's conclusion that permitting Jane to testify via closed-circuit television was necessary to protect her welfare, that she would be traumatized by Molina's presence, and that the trauma would be "more than *de minimis.*" *See Walker v. State*, 461 S.W.3d 599, 606 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (mother's testimony regarding daughters' fears of appellant was sufficient to demonstrate that use of CCTV was necessary); *see also Craig,* 497 U.S. at 855–56, 110 S. Ct. at 3169; *Gonzales*, 818 S.W.2d at 762.

We overrule Molina's second issue.

## C. Did permitting Jane to testify by closed-circuit television deprive Molina of the presumption of innocence?

In his third issue, Molina argues that the admission of Jane's closed-circuit testimony impaired Molina's presumption of innocence. He contends that displaying Jane on the television monitor for the jury "was analogous to allowing a defendant to sit through a jury trial while wearing handcuffs and leg shackles."

The Court of Criminal Appeals has rejected this argument. In *Marx v. State*, 987 S.W.2d 577 (Tex. Crim. App. 1999), the appellant challenged the admission of

a child victim's closed-circuit testimony, alleging that it deprived him of the presumption of innocence. *Id.* at 581. The Court disagreed, concluding that it did "not believe that the challenged practice tended to brand appellant with an unmistakable mark of guilt." *Id*. at 582.

Molina attempts to distinguish his case from *Marx*, arguing that, in *Marx*, the trial court instructed the jury "that the closed circuit television procedure about to be employed was authorized by statute 'in these types of cases,'" and the trial court here offered no such instruction. *Id.* at 581. But the *Marx* Court concluded that the "challenged practice" (testimony via closed-circuit television) did not impermissibly brand appellant. *Id.* at 582. And it stated that "[e]ven in the absence of [the trial court's] instruction, the use of a closed circuit television procedure would probably be viewed by the jury as suggesting that the witness was fearful of testifying in the courtroom setting rather than fearful of testifying while looking at the defendant." *Id*. (internal quotation marks omitted); *see also Lozano v. State*, No. 05-98-00534-CR, 1999 WL 793943, at *3 (Tex. App.—Dallas, Oct. 6, 1999, no pet.) (not designated for publication) (citing *Marx* and rejecting argument that trial court erred, in violation of defendant's presumption of innocence, in refusing to instruct jury that it could not draw adverse inferences against appellant from use of closed-circuit television testimony; "the court further noted that even without such an instruction, the appellant's constitutional rights would not have been impaired"); *Francis v.*

14

*State*, No. 07-05-0293-CR, 2007 WL 1490461, at *2–3 (Tex. App.—Amarillo, May 22, 2007, no pet.) (mem. op., not designated for publication) (similar).

The admission of Jane's testimony by closed-circuit television here did not violate Molina's presumption of innocence. We overrule Molina's third issue.

## Conclusion

We affirm the judgment of the trial court.


                                            Jennifer Caughey
                                            Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).