2020 IL App (2d) 180142-U
No. 2-18-0142
Order filed June 2, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-DV-1078 |
| JESUS LOPEZ JR., | ) ) ) | Honorable Jeffrey S. MacKay, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court abused its discretion by admitting testimony that the elderly victim, who had died before trial, made gestures to the police to indicate that defendant had punched him in the face: the testimony violated defendant's right to confront witnesses, and the constitutional error required a new trial because it was not harmless beyond a reasonable doubt.

¶ 2    Following a trial before a six-person jury, defendant, Jesus Lopez Jr., was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)).  The conviction was based on evidence that defendant punched his elderly father, Jesus Lopez Sr. (Mr. Lopez), who passed away from an unrelated illness prior to trial.  Defendant argues that he is entitled to a new trial because the

admission of evidence of gestures that Mr. Lopez made while talking to the police violated his right to confront witnesses. We reverse the conviction and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant's mother, Anita Lopez Gonzalez, testified that, on August 18, 2017, she and Mr. Lopez were at home in their living room. She was reading on the couch and Mr. Lopez, who was 84 years old, was in bed. Gonzalez testified that she saw defendant come down the stairs and hit Mr. Lopez. She then got up from the couch and tried to separate defendant and Mr. Lopez. She believed that defendant had been drinking. Asked whether she noticed any injury to Mr. Lopez, she responded, "Well, then it was swollen." On cross-examination, Gonzalez acknowledged that she previously told someone named Sabina Jacobs that she knew nothing about defendant hitting Mr. Lopez.

¶ 5    On August 31, 2017, West Chicago police officers Waylon Potts and Michael Zepeda spoke with Mr. Lopez, Gonzalez, and defendant at the family home. Mr. Lopez spoke Spanish and Zepeda translated the conversation. Mr. Lopez had some difficulty speaking, and he used gestures during the conversation. Zepeda testified that, at one point, Mr. Lopez "made a closed fist with his hands [*sic*]" and that Mr. Lopez "touched the left side of his face." Defendant objected to the testimony on hearsay grounds. The trial court overruled the objection. Zepeda testified that the left side of Mr. Lopez's face was bruised and yellow.

¶ 6    Defendant told Potts that, on the date of the incident, he had consumed about a pint of alcohol. At some point, Mr. Lopez called defendant a "faggot." Later in the day they got into a "verbal altercation." Defendant told Potts that he had blacked out and did not remember anything else from that day. Gonzalez told Zepeda that she did not see a physical altercation between

defendant and Mr. Lopez but, according to Zepeda, Gonzalez reported that she "did hear a commotion coming from the room."

¶ 7 Mr. Lopez's granddaughter, Anna Dominguez, testified that she visited the family home on August 18, 2017. Mr. Lopez did not have any injuries at the time. When Dominguez visited again the next day, she noticed a bruise on Mr. Lopez's cheekbone.

¶ 8 The jury found defendant guilty of domestic battery and defendant filed a timely motion for a new trial in which he argued, *inter alia*, that Zepeda's testimony about the gestures Mr. Lopez made during their conversation was inadmissible hearsay and violated defendant's constitutional right to confront the witnesses against him. The trial court agreed with defendant that the testimony was hearsay. However, the trial court found that the error was harmless. Applying the harmless-error standard set forth in *People v. White*, 134 Ill. App. 3d 262, 283 (1985), the trial court concluded that there was no reasonable probability that the jury would have acquitted defendant if the evidence had been excluded. The trial court sentenced defendant to a 90-day jail term, with credit for 71 days in pretrial custody, and a 1-year term of probation. This appeal followed.

¶ 9 II. ANALYSIS

¶ 10 Defendant argues that the trial court committed reversible error by allowing Zepeda to testify that, at one point during their conversation, Mr. Lopez "made a closed fist with his hands [*sic*]" and that Mr. Lopez "touched the left side of his face." There is no dispute that Zepeda's testimony about Mr. Lopez's gestures was inadmissible hearsay. Defendant argues however, as he did below, that the testimony also violated his right to confront the witnesses against him. We agree.

¶ 11     The sixth amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him."   U.S. Const., amend. VI.   By virtue of the fourteenth amendment (U.S. Const., amend. XIV), that provision, known as the "confrontation clause," extends to the states.  *Pointer v. Texas*, 380 U.S. 400, 406 (1965).   The confrontation clause bars " 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' "  *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).   For purposes of the confrontation clause, the testimonial nature of an out-of-court statement distinguishes the statement from other hearsay.  *Id.*  In *Davis*, the Court explained the difference between testimonial and nontestimonial statements as follows:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Id.* at 822.

¶ 12     There is no dispute that Mr. Lopez's gestures—making a fist and pointing to his face—were admitted into evidence as statements that he had been punched.  Moreover, the questioning that elicited the gestures was of the type that has been characterized as "interrogation."  *Id.* at 820-21, 829-30.  It is also clear that Potts and Zepeda elicited the statements for a possible criminal prosecution and that there was no ongoing emergency when they spoke with Mr. Lopez.

¶ 13    Having concluded that the admission of Zepeda's testimony about Mr. Lopez's gestures violated defendant's right to confront witnesses, we now consider whether the trial court erred by denying defendant's motion for a new trial.  Citing *People v. Hall*, 194 Ill.2d 305, 343 (2000), the State contends that the trial court's ruling on a motion for a new trial should only be reversed if the trial court abused its discretion.  According to the State, the trial court did not abuse its discretion in allowing the testimony.[1]  We disagree.  "A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable; when no reasonable person would take the view adopted by the trial court; *or when its ruling rests on an error of law*."  (Emphasis added.)  *People v. Johnson*, 2018 IL App (2d) 160674, ¶ 10.  The trial court's ruling here rests on an error of law because the trial court viewed the admission of the testimony about Mr. Lopez's gestures merely as simple hearsay.  Defendant correctly argued that the admission of the testimony also violated his constitutional right to confront the witnesses against him.  Like the improper admission of hearsay, violations of the right to confront witnesses are subject to a harmless-error analysis. However, as defendant correctly points out, the analysis is more stringent in the latter case.

¶ 14    Here, the trial court applied the harmless-error standard set forth in *White*, which held that "[t]he admission of hearsay evidence is harmless error where there is no reasonable probability

---

[1] We note that the trial court denied defendant's motion on the basis that the error complained of was harmless.  We are unaware of any authority suggesting that a reviewing court owes any deference to a trial court's determination that an error is harmless.  Rather, courts appear to consider the question *de novo*.  See, *e.g. People v. Melchor*, 226 Ill. 2d 24, 35 (2007) (Instructing the *Appellate Court* to determine, on remand, whether evidentiary error was harmless).  For purposes of our analysis, however, we will assume that the abuse-of-discretion standard applies.

that the jury would have acquitted the defendant if the hearsay evidence had been excluded." *White*, 134 Ill. App. 3d at 283. The trial court reasoned that the error was harmless because the evidence was not closely balanced. However, in determining whether a constitutional error—such as a violation of the right to confront witnesses—is harmless, the question "is whether it appears *beyond a reasonable doubt* that the error at issue did not contribute to the verdict obtained." (Emphasis added.) *People v. Patterson*, 217 Ill. 2d 407, 428 (2005).

¶ 15    Our supreme court has described three approaches for determining whether constitutional error is harmless: "(1) focusing on the error to determine whether it might have contributed to the conviction, (2) examining the other evidence in the case to see if overwhelming evidence supports the conviction, and (3) determining whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Id.* Under these approaches, the admission of the challenged testimony was not harmless. Evidence about Mr. Lopez's gestures was admitted as proof that he had been punched. Other than Mr. Lopez's gestures, the only evidence of defendant's guilt was Gonzalez's testimony that she saw defendant strike Mr. Lopez and Dominguez's testimony that, on August 19, 2017, Mr. Lopez's face had a new bruise that was not there the day before. Gonzalez's testimony was impeached by her statement to police that she did not see what happened. Moreover, Dominguez's testimony did establish how Mr. Lopez came to be bruised. The properly admitted evidence of defendant's guilt was far from overwhelming.

¶ 16    Although Gonzalez's testimony covered the same subject as Zepeda's description of Lopez's gestures, the gestures were not merely cumulative, because it is unclear whether the jury would have credited Gonzalez's testimony without hearing that Mr. Lopez used gestures to indicate that he had been punched. We concluded that, in the absence of additional properly admitted evidence, the error contributed to the conviction. Accordingly, the violation of

defendant's right to confront the witnesses against him was not harmless beyond a reasonable doubt and defendant is entitled to a new trial.

¶ 17                                    III. CONCLUSION

¶ 18     For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded for a new trial.

¶ 19     Reversed and remanded.